# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Walker*, **2012 IL App (2d) 110288**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEMAJ WALKER, Defendant-Appellant. |
| District & No. | Second District <br> Docket No. 2-11-0288 |
| Filed | December 31, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for felony murder was upheld over defendant's contention that the trial court erred by failing to *sua sponte* give the instruction on causation in felony-murder cases, even though the victim of the beating inflicted by defendant died after permission for a blood transfusion was refused by the victim's wife because he was a Jehovah's Witness, since defendant neither tendered the instruction nor argued at trial that it should be given or that the refusal of a transfusion was an intervening cause, and there was no indication that the failure to give the instruction denied defendant a fair trial. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-CF-291; the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices McLaren and Burke concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial, defendant, Semaj Walker, was convicted of first-degree murder under a felony-murder theory (720 ILCS 5/9-1(a)(3) (West 2006)) and sentenced to 32 years' imprisonment. Evidence presented at defendant's jury trial revealed that defendant beat the victim, James Keniski; the victim was taken to a hospital for treatment of his injuries; the victim was a Jehovah's Witness; and, based on religious reasons, the victim's wife prohibited treating doctors from giving the victim a necessary blood transfusion. The victim died soon thereafter. At trial, defendant did not claim that the jury should be given the instruction on causation that may apply in felony-murder cases. As a result, the jury was not given that instruction. On appeal, defendant claims for the first time that he was denied a fair trial when the trial court failed to give the instruction *sua sponte*. For the reasons that follow, we affirm.

¶ 2    The facts necessary to decide the issue raised on appeal are as follows. On May 16, 2007, defendant and some other men went to the home that the victim shared with his wife, Keena Keniski. Defendant and the other men went to the Keniski home to rob the victim. While there, the victim, who had purchased drugs from one of the men before and believed that the men were there to sell him drugs again, was sitting on the bannister of the stairs leading to the basement of their home. Defendant pushed the victim as he sat on the bannister, he fell backward down the stairs, and, according to one witness, defendant then ran down the stairs and began punching and kicking the victim as the victim was lying on the ground. While this was happening, the victim's wallet, among other things, was stolen.

¶ 3    Keena called 911, and the victim was eventually taken to Elmhurst Memorial Hospital. One of the treating doctors at the hospital, Dr. Stephen Mendak, testified that he began treating the victim when he was transferred to the intensive care unit (ICU) at the hospital on May 17, 2007. When the victim first arrived at the ICU, he was conscious and alert. An exam revealed that the victim was suffering from multiple contusions around his face,

thorax, chest, and abdomen. In addition, the victim had, among many other injuries, a hematoma, or a collection of blood, underneath his scalp. Dr. Mendak also observed a collection of blood underneath the skin around the victim's right eye. A CT scan revealed that the victim had a seven-millimeter hematoma under the lining of his brain along with a collection of blood in the space between the lining of his brain and the brain matter itself. Dr. Mendak testified that blunt force trauma would cause blood to pool in these areas.

¶ 4        Further, Dr. Mendak stated that blood had collected in the victim's chest cavity and that, because the bleeding did not stop, a chest tube was inserted. Blood also had pooled in the victim's abdominal cavity. This was caused by a superficial fracture to the victim's liver. Dr. Mendak testified that, based on proper medical procedures, doctors did not operate on the victim's liver or do anything to stop that bleeding. Rather, doctors only continued to monitor it.

¶ 5        Due to all of the bleeding and the victim's infusion of fluids, his hemoglobin count dropped. Because of that and the continued blood loss, Dr. Mendak suggested that the victim be given a blood transfusion. Given that the victim was not alert enough at this point to talk with Dr. Mendak, Dr. Mendak asked Keena whether the victim could undergo a blood transfusion. Dr. Mendak explained to Keena that "it would be fatal if [the victim] didn't get this blood transfusion." Because the victim was a Jehovah's Witness, Keena refused to allow doctors to give him a blood transfusion.

¶ 6        Because the victim could not undergo a blood transfusion, Dr. Mendak gave him iron and attempted to stimulate the victim's bone marrow as a way to replace the blood loss. This did not prove to be successful, and the victim was transferred to Loyola University Medical Center on May 22, 2007, where doctors were better equipped to treat the victim.

¶ 7        The parties stipulated that, if Dr. James Santaniello were called to testify, he would indicate that he treated the victim at Loyola; when the victim was admitted to Loyola on May 22, 2007, he was alert and awake; and surgery to stop the internal bleeding and blood pooling that the victim was experiencing was unsuccessful. Given the amount of blood the victim continued to lose, Dr. Santaniello suggested that the victim undergo a blood transfusion. This was refused on religious grounds. On May 25, 2007, the victim died.

¶ 8        The parties also stipulated that, if Dr. Tera Jones, a pathologist, were called to testify, she would state that she performed an exam to determine the manner and cause of the victim's death. Dr. Jones would testify that, to a reasonable degree of medical and scientific certainty, the victim died as a result of "multiple injuries due to blunt trauma, due to an assault and that the manner of death was homicide."

¶ 9        After the State rested, defendant moved for a directed verdict, arguing that the State failed to prove that defendant caused the victim's death. Specifically, defendant claimed that the refusal to have the victim undergo a blood transfusion was an intervening cause of his death, and, as a result of this intervening cause, defendant did not "know [whether] anybody can technically legally be held accountable" for the victim's death. In reply, the State noted that the parties had stipulated to Dr. Jones's testimony and that Dr. Jones concluded that the victim died because of blunt force trauma and that the manner of death was homicide. Moreover, the State observed that Illinois Pattern Jury Instructions, Criminal, No. 7.15 (4th

ed. 2000) (hereinafter, IPI Criminal 4th No. 7.15), which instructs the jury on causation in murder cases, provides that the defendant's acts need not be "the sole and immediate cause of [the victim's] death." Based on the State's two points, the trial court denied the motion.

¶ 10    After defendant presented his case and the State presented a brief rebuttal, defendant renewed his motion for a directed verdict without making an argument. The trial court denied the motion. During closing argument, defendant never claimed that the victim died because he was not given a necessary blood transfusion.

¶ 11    When the jury was instructed, it was given IPI Criminal 4th No. 7.15, among other instructions. The jury was not given the instruction governing causation in felony-murder cases (see Illinois Pattern Jury Instructions, Criminal, No. 7.15A (4th ed. Supp. 2011) (hereinafter, IPI Criminal 4th No. 7.15A (Supp. 2011))), which no one claimed should have been given to the jury.

¶ 12    The jury acquitted defendant of intentional first-degree murder and found, per a special verdict, that the State failed to prove that defendant was over 18 and that he personally killed the victim. However, the jury did find defendant guilty of felony murder, which was predicated on home invasion (720 ILCS 5/12-11 (West 2006)), residential burglary (720 ILCS 5/19-3 (West 2006)), and robbery (720 ILCS 5/18-1 (West 2006)), as well as of all three of these predicate offenses. The trial court merged these findings into a finding of guilty of felony murder predicated on robbery and sentenced defendant. Defendant timely appealed, having never claimed in the trial court that the jury should have been given IPI Criminal 4th No. 7.15A (Supp. 2011).

¶ 13    At issue in this appeal is whether defendant was denied a fair trial when the trial court did not *sua sponte* give the jury IPI Criminal 4th No. 7.15A (Supp. 2011). Defendant claims that this instruction should have been given to the jury, because the instruction would have advised the jury that defendant could be held accountable for the victim's death only if his death was a "direct and foreseeable consequence of a chain of events set into motion by [defendant's] commission of [the other] offense[s]." *Id.* In considering that issue, we first observe that defendant neither tendered that instruction to the trial court nor otherwise claimed in the trial court that that instruction should have been given.

¶ 14    Illinois Supreme Court Rule 366(b)(2)(i) (eff. Feb. 1, 1994) provides that "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Moreover, "a defendant will be deemed to have procedurally defaulted his right to obtain review of any supposed jury instruction error if he failed to object to the instruction or offer an alternative at trial and did not raise the issue in a posttrial motion." *People v. Sargent*, 239 Ill. 2d 166, 188-89 (2010). However, there is an exception to these rules. Pursuant to Illinois Supreme Court Rule 451(c) (eff. July 1, 1997), " 'substantial defects' in criminal jury instructions 'are not waived by failure to make timely objections thereto if the interests of justice require.' " *Sargent*, 239 Ill. 2d at 189 (quoting Ill. S. Ct. R. 451(c) (eff. July 1, 1997)).

¶ 15    Defendant advances two ways in which this court may review his claim. First, defendant claims that he preserved the issue by raising the issue in his motions for a directed verdict. We disagree. In those motions, defendant said nothing about any jury instruction. In any event, as the State points out and the cases indicate, raising the issue in a motion for a

directed verdict would not be enough. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.)).

¶ 16 Second, defendant argues that, if his argument is not preserved, this court should review his claim under the plain-error doctrine. Rule 451(c) is coextensive with the plain-error doctrine. *Sargent*, 239 Ill. 2d at 189. The plain-error doctrine permits courts to review alleged errors that were not preserved below "when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* Under either prong, the defendant bears the burden of persuasion. *Id.* at 190.

¶ 17 A necessary antecedent to invoking the plain-error doctrine is to determine whether error occurred at all. *Id.* at 189. Thus, we must first decide if it was error for the trial court not to *sua sponte* give the jury IPI Criminal 4th No. 7.15A (Supp. 2011). See *id.* at 189-90.

¶ 18 Generally, when there is evidence to support the giving of an instruction, the trial court abuses its discretion when it does not give the jury that instruction. See *People v. Jones*, 219 Ill. 2d 1, 31 (2006). However, the abuse-of-discretion standard does not apply in every jury instruction case. Rather, when the issue raised concerns whether the law was accurately conveyed in the jury instructions, our review is *de novo*. *People v. Parker*, 223 Ill. 2d 494, 501 (2006); *People v. Herron*, 215 Ill. 2d 167, 174 (2005). Here, because the issue raised concerns whether the jury was provided with the correct legal principles that apply in this case, thereby allowing the jury to reach a proper result based on the applicable law and the evidence, we conclude that our review is *de novo*.

¶ 19 In considering whether the court had a duty to *sua sponte* give the jury an instruction on foreseeability, we find instructive *People v. Parks*, 65 Ill. 2d 132 (1976). There, an accomplice to the robbery and murder in which the defendant allegedly participated testified that he and the defendant robbed the victim and that the defendant shot and killed the victim as the victim attempted to flee. *Id.* at 134. This was the only evidence linking the defendant to the crimes. *Id.* When the case was submitted to the jury, the jury did not receive any instruction concerning the testimony of an accomplice, and, in fact, the defendant objected to any instruction that used the term "accomplice." *Id.* at 135-36.

¶ 20 On appeal, the defendant argued that the trial court should have *sua sponte* instructed the jury on accomplice testimony. *Id.* at 133. Our supreme court disagreed. *Id.* at 138. In doing so, the court observed that "[g]enerally, a party who desires a specific instruction must offer it and request the court to give it and the trial court has no obligation to instruct on its own motion." *Id.* at 137. The court went on to note that there are exceptions to this rule. *Id.* That is, "[i]n criminal cases *** this rule is modified in certain situations by the requirements of a fair trial." *Id.* Specifically, "[i]t has been held that a court bears the burden of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence[,] and on the question of burden of proof." *Id.*

¶ 21 Although, as the court recognized, an instruction on accomplice testimony did not fall

within one of these categories, the court nevertheless looked at whether, "viewing the defendant's trial as a whole, it is clear the jury was not deprived, by the failure to give the accomplice instruction, of essential guidance in its evaluation of the evidence." *Id.* at 138. The court determined that there was no such deprivation, given that the accomplice was questioned about his prior inconsistent statements and his reasons for implicating the defendant, and the jury was given instructions on judging the credibility of the witness and prior inconsistent statements. *Id.* Accordingly, the court determined that "[a]lthough these general instructions were not as absolute an admonition as the more particularized accomplice instruction would have been, nonetheless, [these general instructions] provided the jury with sufficient direction." *Id.*

¶ 22    Here, in light of *Parks*, we decline to conclude that the trial court erred when it did not *sua sponte* give the jury IPI Criminal 4th No. 7.15A (Supp. 2011). First, the jury was given instructions for the presumption of innocence, the burden of proof, and the elements of the offense of felony murder. The issues instruction for felony murder advised the jury:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
>
> *First proposition*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of James R. Keniski; and
>
> *Second proposition*: That when the defendant, or one for whose conduct he is legally responsible, did so,
>
> \*\*\*
>
> [defendant] was committing the offense of home invasion;
>
> or
>
> [defendant] was committing the offense of residential burglary;
>
> or
>
> [defendant] was committing the offense of robbery."

See Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. 2000). IPI Criminal 4th No. 7.15A (Supp. 2011), which defendant argues should have been given to the jury, instructs the jury about foreseeable causation in felony-murder cases. It states:

> "A person commits the offense of first degree murder when he commits the offense of _____, and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of _____.
>
> It is immaterial whether the killing is intentional or accidental [(or committed by a confederate without the connivance of the defendant) (or committed by a third person trying to prevent the commission of the offense of _____)]." *Id.*

As noted, as relevant here, a trial court need advise the jury only about essential elements of the crime charged. See *People v. Pearson*, 252 Ill. App. 3d 1, 11 (1993) (the court has a duty to instruct the jury on "essential elements" of the crime charged). Although the parties suggested otherwise at oral argument, the causation instruction contained in IPI Criminal 4th No. 7.15A (Supp. 2011) does not set out an essential element of felony murder. See *People v. Childress*, 321 Ill. App. 3d 13, 21 (2001) (court not bound by parties' concessions made

-6-

at oral argument). Unlike the issues instruction that contains the elements of the offense charged, our supreme court has explicitly determined that IPI Criminal 4th No. 7.15A (Supp. 2011) does not need to be given to the jury when a defendant is tried for felony murder. See *People v. Hudson*, 222 Ill. 2d 392, 401 (2006) ("Although foreseeability is a necessary component of a proximate cause analysis, it need not be specifically mentioned in a jury instruction to communicate the idea of 'proximate' to [the] jury."). As the committee comments make clear, IPI Criminal 4th No. 7.15A (Supp. 2011) "should be used in felony murder cases where causation is an issue." IPI Criminal 4th No. 7.15A, Committee Note, at 14 (Supp. 2011). Certainly, if IPI Criminal 4th No. 7.15A (Supp. 2011) should be given only when causation is at issue, it cannot contain an essential element of the offense charged, or, otherwise, it would have to be given in every felony-murder case.

¶ 23     Second, although the jury was not given IPI Criminal 4th No. 7.15A (Supp. 2011), it was given an instruction based on IPI Criminal 4th No. 7.15. This instruction provided:

> "In order for you to find that the acts of the defendant, or one for whose conduct he is legally responsible, caused the death of James R. Keniski, the State must prove beyond a reasonable doubt that defendant's acts, or acts for one for whose conduct he is legally responsible, were a contributing cause of the death and that the death did not result from a cause unconnected with the defendant, or one for whose conduct he is legally responsible. However, it is not necessary that you find the acts of the defendant, or acts for one whose conduct he is legally responsible, were the sole and immediate cause of death."

Although, as in *Parks*, IPI Criminal 4th No. 7.15 is not as specialized as IPI Criminal 4th No. 7.15A (Supp. 2011), it did provide the jury with "sufficient direction" in this case, as defendant never claimed in front of the jury that the victim's refusal of a blood transfusion was an unforeseeable intervening cause sufficient to relieve defendant from liability for the victim's death. See *People v. Nash*, 2012 IL App (1st) 093233, ¶ 26 (jury instructions must be based on the evidence presented during trial).

¶ 24     It is critical here that defendant never argued to the jury that the refusal to undergo a blood transfusion was an intervening cause. That is, under the facts presented here, the court was not required to give the jury IPI Criminal 4th No. 7.15A (Supp. 2011), because defendant's theory at trial was not that the victim died from an unforeseeable circumstance. Rather, defendant claimed at trial that the State's evidence did not establish that he was the perpetrator who injured the victim. Had defendant made the argument at trial that the cause of the victim's death was questionable, given that a blood transfusion was not given, and depending upon the reason it was not given, then his position on appeal would have been stronger. However, that theory was not presented to the jury. As the State contended at oral argument, giving the jury IPI Criminal 4th No. 7.15A (Supp. 2011) may very well have been disadvantageous, as that instruction provides, contrary to defendant's theory at trial, that a defendant will be liable for a victim's death even when the death is accidental and done without the defendant's approval or knowledge.

¶ 25     Given that IPI Criminal 4th No. 7.15A (Supp. 2011) does not contain an essential element of felony murder and that nothing in the record indicates that defendant was denied

a fair trial when the court did not *sua sponte* give the jury IPI Criminal 4th No. 7.15A (Supp. 2011), we cannot conclude that error, let alone plain error, arose in this case. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008) ("Absent reversible error, there can be no plain error.").

¶ 26     As an aside, we briefly mention that, in other jurisdictions, courts have considered whether a victim's refusal to undergo treatment for an injury the defendant caused can be an intervening cause sufficient to relieve the defendant of liability for the victim's eventual death. In those cases, the courts have concluded that refusing treatment is not a sufficient intervening cause. See, *e.g.*, *State v. Perez-Cervantes*, 6 P.3d 1160 (Wash. 2000) (the defendant, who stabbed the victim, was accountable for the victim's death even though the victim did not seek treatment when, while recovering at home, he began complaining about his injuries, and toxicology tests performed on the victim after his death revealed that heroin and cocaine found in the victim's system were a contributing cause of the victim's death); *Franklin v. State*, 51 S.W. 951 (Tex. Crim. App. 1899) (the defendant, who shot the victim in the leg, was accountable for the victim's death even though the victim was told by doctors that his leg should be amputated to avoid blood poisoning, the victim refused to have his leg amputated at that time, and the victim ultimately died of blood poisoning). Moreover, in a case from this state where the defendant claimed that the treating doctor withheld medical treatment and that this was the intervening cause of the victim's death, the court observed that " 'the family of the victim owe[s] no duty to treat the victim so as to mitigate the defendant's criminal liability.' " *People v. Gulliford*, 86 Ill. App. 3d 237, 242 (1980) (quoting *In re J.N.*, 406 A.2d 1275, 1282 (D.C. Cir. 1979)). In fact, " '[t]he defendant's desire to mitigate his liability may never legally override, in whole, or in part, the decisions of *** the family regarding the treatment of the victim.' " *Id.* (quoting *J.N.*, 406 A.2d at 1282). Given these cases, and assuming that this court may consider the issue of foreseeability as a matter of law, we question defendant's claim that refusing to have the victim undergo a blood transfusion was an intervening cause sufficient to render defendant not liable for his death.

¶ 27     For these reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 28     Affirmed.