2023 IL App (1st) 210848
No. 1-21-0848
Opinion filed June 2, 2023

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 CR 4904-01 |
| DZEVAD AVDIC, | ) ) ) | The Honorable Lauren G. Edidin |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justice C. A. Walker concurred in the judgment and opinion.
Justice Tailor specially concurred, with opinion.

**OPINION**

¶ 1        Defendant Dzevad Avdic, age 19, was convicted of one count of felony murder for the

death of Maxwell Gadau and one count of attempted murder under an accountability theory

for the wounding of Jeanette Spitz. The shooting occurred on September 28, 2014, in Skokie,

Illinois, in Spitz's parked car. Defendant was neither the shooter nor present in Spitz's car

when the shooting occurred. Spitz, one of the victims, had hoped to sell marijuana to defendant.

However, unbeknownst to her, a group of young men, including defendant, planned to steal

the marijuana from her. Gadeau, the murder victim, had the misfortune of accompanying Spitz

to the planned sale. At trial, defendant and two of the State's cooperating witnesses testified that they intended to simply grab the marijuana offered for sale and run. Defendant drove the vehicle that transported himself and his associates to and from the scene, and he remained inside his vehicle during the encounter. Defendant testified that the murder victim was a good friend of his from the swim team and that he did not know the shooter was armed. Antonio Hicks, who was identified as the shooter by the event witnesses at the instant trial, was tried separately and acquitted on all counts. For the murder and attempt counts, defendant was sentenced to a total of 56 years with the Illinois Department of Corrections (IDOC), which was the mandatory minimum sentence for the two counts.

¶ 2        On this appeal, defendant claims (1) that the trial court erred in denying his motion to quash his arrest and suppress the resulting evidence, (2) that the trial court's jury instructions were erroneous, (3) that the trial court erred in its response to a jury question during jury deliberations, (4) that the cumulative effect of these errors deprived defendant of a fair trial, and (5) that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Regarding the sufficiency argument, defendant argued, among other things, that the State failed to prove that defendant agreed to participate in a felony, namely, an armed robbery, as opposed to a simple theft. For the following reasons, we reverse.

¶ 3                                    BACKGROUND

¶ 4        The evidence at trial established that defendant pretended to be "Tyler" in text messages exchanged with Spitz. "Tyler" texted that he wanted to buy "weed" from Spitz. Four men, including defendant, planned to steal the weed from Spitz, and they drove to meet her. Two of them remained in defendant's car, while the other two exited defendant's car and entered Spitz's car. Defendant and Nicholas Smith were the two men who remained in

defendant's car. In Spitz's car, Spitz and Gadau sat in the front seat, while Hicks, the subsequent shooter, sat in the back seat with Myles Hughes. Hicks shot Gadau, killing him, and shot Spitz, wounding her, and Hughes grabbed the marijuana. Hicks and Hughes ran back to defendant's car, which drove off. The four men later divvied up the marijuana. At trial, four of the six people present at the scene testified, namely: Smith, Hughes, Spitz, and defendant. The only two who did not testify were Hicks, the shooter, and obviously Gadau, the murder victim.

¶ 5                                    I. Pretrial Suppression Motion

¶ 6          Defendant moved pretrial to quash his arrest based on a stipulated set of facts. We provide the stipulation below, since the sufficiency of the stipulated facts is an issue on appeal. The parties stipulated as follows:

"It is hereby agreed between the parties that at 19:15 on September 30, 2014, officers drew a weapon on Defendant Avdic outside his home at ***[1] S. Honore, Chicago; handcuffed him and took him to be interviewed at the Skokie Police Department.

It is further stipulated that members of the investigation team learned the following information before defendant's arrest:

On September 28, 2014, Jeanette Spitz and Max Gadau were shot at or around 21:37 in Spitz' Honda Civic which was parked outside *** N. Kedvale, Skokie.

Surveillance video from *** the neighbor to the north [on] *** N. Kedvale, was obtained shortly thereafter. Additional footage was obtained at 01:30 on 9/29/14. The video shows a car pass south on Kedvale, then return driving north on Kedvale, parking on the

---

[1]Identifying information, such as exact street numbers or full cell phone numbers, has been removed, where possible.

east side of the street just north of the house across from the [neighbor to the north]. Two individuals walk south to [Spitz' parked car]. Two other individuals walk out of the Housakos home at *** N. Kedvale. The four individuals get into Ms. Spitz's car. Two individuals exit the rear of her car and run back north to the waiting car which leaves. The parties stipulate that Attachment A is a video that has been spliced together in chronological order with the 4 different camera angles and truly and accurately depicts these events [during] the night of September 28, 2014.

*On September 29, 2014, the following events transpire:*

At 01:08 Jeanette's father signs a consent to search Jeanette's phone. Jeanette's mother calls a friend of Jeanette's who provides the passcode.

At 01:15 Khammo Hermez, a friend who has been with Jeanette and Max at Constantine Housakos' home tells the police that Jeanette was about to sell drugs to Tyler Schur, a student of Niles North. He provides Tyler's cell phone number as ***-8918. He further stated that he knew Jeanette had been trying to sell 'Tyler' 2 ounces for the past few days.

At 02:21, police begin to photograph the text messages on Jeanette's phone which show that Jeanette had been texting someone purporting to be Tyler with a Mohawk with a phone number ***-6050. Jeanette was to sell 2 ounces of cannabis for $500 to the person associated with phone number ***-6050. Police also noted that the person associated with ***-6050 called Jeanette at 21:28 and 21:38 on September 28, 2014. See last 5 pages of Attachment Group C.

At 05:06 Constantine Housakos also tells police that he knew Jeanette had been trying to sell 2 ounces of cannabis to Tyler Schur and he was with her the prior day when that deal was attempting to be set up.

At 6:00 p.m. police try to locate Tyler Schur by watching his home. Police stop him in a vehicle at 07:25 just south of Touhy on the Eden's expressway.[2]

At 08:15 police attempt to extract Jeanette's phone. The summary of the 51 text messages between Jeanette and ***-0650 between the dates of September 24, 2014 – September 28, 2014 are shown in the Attachment Group B.

At 8:15 Tyler Schur is interviewed. He claims he arrived home at 18:00 on 9/28 and stayed there all night. He later states he was with Yuji Tsukamoto that evening. That they had ridden bikes to Noodles and then Yuji's mother came to pick him up.

At 18:15 Tyler Schur provided consent for the cell phone he had on his person which was determined to be ***-4330. *** Later that day, police take Schur's phone to be extracted.

At 20:45 Presiding Judge Sutker-Dermer signs an order for a pen register for T-Mobile ***-6050. See attachment Group C.

At 21:38, police receive a response from T-Mobile indicating that Gladys Avdic is the subsidiary of ***-6050. Furthermore, the records show that the two calls placed at 21:28 and 21:38 on September 28, 2014[ ]from ***-6050 to Jeanette utilized the cell tower at Church and Crawford, 3 blocks from the crime scene. See attachment Group D.

---

[2]This is not a typo. "Expressway" is not capitalized in the original and the name of the highway is written as "Eden's" in the original.

Also that day, 9/29/14 police utilize CLEAR[3] database and learn that ***-6050 was associated with [defendant] who filed a police report against [another individual] for an armed robbery that occurred on 8/11/14. [Defendant] listed a home address at *** S. Honore, Chicago.

*On 9/30/14, the following events transpire:*

Police review the extraction from Tyler Schur's phone and see that Tyler had been texting Samantha [at] ***-4964 to meet him at a park. She called him at 21:39 on 9/28/14.

At 15:55 Presiding Judge Sutker-Dermer signs a warrant for the T-Mobile records of ***-0650, noting the conversation between this number[,] purporting to be from Tyler Schur[,] and Jeanette.

At 16:05 Presiding Judge Sutker-Dermer signs a warrant for the T-Mobile records for the phone number that Tyler Schur had in [his] possession ***-4330 and that his stepmother provided for him to the police.

At 16:45 Presiding Judge Sutker-Dermer signs a warrant for ***-8918, the number Housakos had for Tyler Schur and the number Tyler Schur stated was his.

At 18:49 officers interviewed Samantha who confirms that she was planning to meet Tyler at 21:35[4] to buy Xanax from him at the swings of Oakton Community College [(OCC)]. She called him at 21:39 to say she was running late and he was already at OCC. When she arrived he was waiting for her. He gave her the Xanax, they spoke for 10-15

---

[3] Citizen Law Enforcement Analysis and Reporting, known as CLEAR, is a computer program used by the Chicago Police Department that permits officers to input a name or address and access information from a variety of different databases and sources.

[4] The times given here simply as "21:35" and "21:39" appear to be references to the night of the offense. The timing is significant because the parties stipulated that Jeanette Spiz and Max Gadau were shot "at or around 21:37."

minutes, he was not acting suspicious, and he did not use his phone. She further described his bike, clothing and provided info about herself, provided her cell phone number as \*\*\*-4964. The interview was concluded at 19:25.

At 19:15[5] defendant was placed under arrest."

¶ 7        Based on the above stipulated facts, defendant moved to quash his arrest on the ground that the police lacked probable cause to arrest him at the time that they did. Defendant's motion sought suppression of his postarrest statements, as well as any evidence obtained as the result.

¶ 8        On June 4, 2018, after listening to arguments by both sides, the trial court denied defendant's motion, stating:

"I was fortunate to receive the stipulation that was made by and between the parties prior to this Court hearing, was able to read it and review all of the attachments and then was able to view the video in the courtroom, and I appreciate both parties' efforts in presenting this motion today and with the stipulations.

And I do not believe that there was a lack of probable cause to arrest at the time that the defendant was placed and handcuffed at the scene. They had absolutely enough at that time. This was a murder, and they didn't know if the other individual was—at that point, I believe, from the statements was still in critical condition.

It was a very serious case. They had a phone number. They had text messages. they had—that the phone was at the scene at the time of the—at the time of the murder by the cell tower.

_____

[5]This is not a typo. The stipulation indicates that defendant was arrested 10 minutes before the interview with Samantha concluded.

They had properly executed *** applications that were made to the presiding judge in the building, although that does not come into play in the probable cause determination. However, they were properly executed.

And so based on everything that was presented today, the motion to quash and suppress is denied."

¶ 9                                                    II. Trial

¶ 10        At trial, the State proceeded on only two counts: counts X and XXI. Count X charged felony murder, stating that defendant and others "shot and killed Maxwell Gadau while armed with a firearm during the commission of a forcible felony, to wit: robbery." Count XXI charged attempted first degree murder, stating that defendant and others, "with intent to kill, did an act, to wit: shot Jeanette Spitz while armed with a firearm which constituted a substantial step towards the commission of first degree murder." The other counts were dismissed prior to trial.

¶ 11        Of the various witnesses called at trial, three were cooperating witnesses who had pled guilty and were testifying pursuant to an agreement with the State: Smith, Hughes, and Jeremy Ly. Ly was the one who had provided Spitz's cell phone number to defendant.

¶ 12                        III. Jury Deliberations, Verdict, and Sentencing

¶ 13        After listening to argument and instructions, the jury retired to deliberate and shortly thereafter sent out the following question: "Does not stopping the person who committed a crime constitute knowingly soliciting, aiding, abetting, agreeing to aid, or attempting to aid the other person in planning or commission of an offense?" Defense counsel argued that the "answer" to the question is "categorically, no." Defense counsel asserted: "And I know that the easy answer is you have your instructions, continue to follow them, but that does not give the finder of fact any guidance at all." Defense counsel maintained: "By not answering that

8

and saying they've been instructed when clearly the instructions don't deal with this specific issue leads to the possible returning of a verdict against Mr. Avdic on something that's not the law." Over defense counsel's objection, the trial court instructed the jury: "You have the legal instructions, please continue to deliberate."

¶ 14    The second question sent out by the jury was: "In the definition of legally responsible, what does the word offense refer to? Does the offense change for each proposition?" The trial court stated that it did not "really even understand the question." The parties and the court agreed to respond that the jury should keep deliberating. At 10 minutes to 6 p.m., the jury sent out two more questions. First, the jury asked: "Are we able to see the sworn statements from Jeremy, Myles, and Nick? The proffers?" Defense counsel argued that the answer to that question was no, since they had not been admitted as exhibits into evidence. The second question was: "What if we're split and stuck?" The court instructed the jurors that they had all the evidence and to continue deliberating.

¶ 15    Continuing their deliberations, the jurors found defendant guilty of attempted first degree murder and first degree murder (felony murder). On July 1, 2021, defendant was sentenced to the mandatory minimum sentences of 35 years for the murder and 21 years for the attempt, for a total of 56 years. No issues are raised on this appeal regarding the sentence or sentencing. Defendant filed a timely notice of appeal on July 19, 2021, and this appeal followed.

¶ 16                                   ANALYSIS

¶ 17                              I. Probable Cause

¶ 18                             A. Fourth Amendment

¶ 19        Defendant's first claim is a violation of his constitutional right against unreasonable seizures.

¶ 20        Both the Illinois Constitution and the fourth amendment of the United States Constitution protect citizens from unreasonable searches and seizures by police officers. *People v. Holmes*, 2017 IL 120407, ¶ 25; U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Article I, section 6, of the Illinois Constitution provides, in relevant part: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches[ and] seizures ***." Ill. Const. 1970, art. I, § 6. Similarly, the fourth amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." U.S. Const., amend. IV. Through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) the federal protection of the fourth amendment applies to searches and seizures conducted by the states. *People v. Hill*, 2020 IL 124595, ¶ 19.

¶ 21        With respect to article I, section 6, of the Illinois Constitution, the Illinois Supreme Court has chosen to "follow decisions of the United States Supreme Court regarding searches and seizures." *Holmes*, 2017 IL 120407, ¶ 25. "[T]he 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials," such as police officers. *People v. Jones*, 215 Ill. 2d 261, 269 (2005); *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 55.

¶ 22        If a search or seizure occurs in violation of the fourth amendment, the fruits of that search or seizure may be suppressed. The purpose of the fourth amendment's exclusionary rule is to protect all of us by deterring fourth amendment violations by the police. *Terry v. Ohio*, 392 U.S. 1, 12 (1968) ("the rule excluding evidence seized in violation of the Fourth

Amendment has been recognized as a principal mode of discouraging" unreasonable seizures for all citizens); *People v. Flunder*, 2019 IL App (1st) 171635, ¶ 40 ("The fourth amendment is a blunt-edged sword, but it protects the privacy of us all, both the ones with contraband and the ones without it.").

¶ 23    On a motion to suppress, such as the one at issue here, the defendant bears the initial burden of coming forward with proof. *People v. Cregan*, 2014 IL 113600, ¶ 23. If the defendant makes a *prima facie* showing that the evidence or statement was obtained in an illegal search or seizure, the burden then shifts to the State to produce evidence to counter the defendant's *prima facie* showing. *Cregan*, 2014 IL 113600, ¶ 23. However, "[t]he ultimate burden of proof remains with the defendant." *Cregan*, 2014 IL 113600, ¶ 23.

¶ 24                                      B. Standard of Review

¶ 25    Normally, when reviewing a motion to suppress on appeal, "we apply a bifurcated standard of review: (1) rejecting a trial court's factual findings only if they are against the manifest weight of the evidence (2) but reviewing *de novo* the trial court's conclusion as to whether those facts satisfy the legal standard to warrant suppression." *People v. Hernandez*, 2017 IL App (1st) 150575, ¶ 90 (citing *People v. Johnson*, 237 Ill. 2d 81, 88-89 (2010)). However, in the case at bar, the trial court made no factual findings, since all the facts were stipulated. Thus, the issue before us is a straight question of law, and our review is simply *de novo*. *De novo* review means that we are " ' "free to undertake [our] own assessment of the facts in relation to the issues." ' " *Johnson*, 237 Ill. 2d at 88-89 (quoting *People v. Cosby*, 231 Ill. 2d 262, 271 (2008), quoting *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006)). We perform the same analysis that a trial court would, and we owe no deference to the trial court. *Hernandez*, 2017 IL App (1st) 150575, ¶ 92

11

¶ 26                                  C. Probable Cause

¶ 27          Defendant argues a lack of probable cause. An arrest without a warrant is valid only if supported by probable cause. *People v. Grant*, 2013 IL 112734, ¶ 11. Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably prudent person to believe that the suspect has committed a crime. *Grant*, 2013 IL 112734, ¶ 11. This "calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt." *Grant*, 2013 IL 112734, ¶ 11. Thus, the question of probable cause involves "probabilities, not certainties." *Hill*, 2020 IL 124595, ¶ 24.

¶ 28          On appeal, defendant concedes that the phone number ending in 6050 was "linked to the crime," The 6050 phone, as defendant acknowledges, was used to set up the meeting with Spitz. However, defendant argues that, at the time of his arrest, the State lacked probable cause to believe that he used and possessed this phone. First, defendant had the same last name as the phone's subscriber: Avdic. Second, defendant listed that same phone number as his in a police report that he filed only six weeks prior to the shooting. Where once an officer would have been expected to check a phone directory (*e.g.*, *People v. Bean*, 73 Ill. App. 3d 918, 923 (1979)), in the current age of cell phones and multiple lines, checking CLEAR for a person's self-reporting of his or her own phone number is just as effective. See *Grant*, 2013 IL 112734, ¶ 11 ("[w]hether probable cause exists is governed by commonsense considerations").

¶ 29          The parties stipulated that Spitz planned to sell marijuana to the person with this 6050 phone number. The buyer, with the 6050 number, called Spitz twice within minutes of the murder: once at 21:28 and once at 21:38. Spitz and Gadau were shot "at or around 21:37." Both calls utilized a cell phone tower located only three blocks from the shooting, establishing that the caller was close to, if not at, the crime scene. Spitz and Gadau were shot in Spitz's car.

A surveillance video showed four people entering Spitz's car, but only two people leaving, and those two ran out, toward a waiting car, which then left.

¶ 30    Exercising our *de novo* standard of review, we do not find persuasive defendant's argument that the officer lacked cause to believe that defendant possessed the 6050 phone. In addition, the stipulated facts were sufficient to lead a reasonably prudent person to believe that the person who possessed this phone had just committed a crime or, at the very least, had aided and abetted one. Thus, we must agree with the trial court that defendant failed to carry his burden of proof and persuasion with respect to his motion to suppress. *Cregan*, 2014 IL 113600, ¶ 23.

¶ 31                II. Jury Instructions

¶ 32    Defendant argues that the trial court erred by refusing to give the following jury instructions that were requested by his counsel: (1) Illinois Pattern Jury Instructions, Criminal, No. 7.15A (approved Jan. 30, 2015) (hereinafter IPI Criminal No. 7.15A) regarding proximate cause and felony murder; (2) Illinois Pattern Jury Instructions, Criminal, Nos. 2.01, 2.01R (approved Dec. 8, 2011) (hereinafter IPI Criminal Nos. 2.01, 2.01R) regarding a lesser included offense, specifically, robbery; (3) Illinois Pattern Jury Instructions, Criminal, No. 5.01A (approved Oct. 28, 2016) (hereinafter IPI Criminal No. 5.01A) regarding the specific intent required for attempted murder; and (4) a nonpattern instruction regarding the guilty pleas of defendant's testifying codefendants, namely, Ly, Hughes, and Smith. The first two instructions concern only defendant's conviction for the murder of Gadau. The third concerns only his conviction for the attempted murder of Spitz. The fourth relates to both convictions.

¶ 33                A. Standard of Review

13

¶ 34    With respect to IPI Criminal No. 7.15A and IPI Criminal No. 5.01A, defendant argues that our standard of review is *de novo*, and the State argues that these instructions are subject to an abuse-of-discretion standard of review. "The function of jury instructions is to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct conclusion." *People v. Pierce*, 226 Ill. 2d 470, 475 (2007); *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). "Although the giving of jury instructions is generally reviewed for an abuse of discretion, when the question is whether the jury instructions accurately conveyed to the jury the law applicable to the case, our review is *de novo*." *Pierce*, 226 Ill. 2d at 475; *People v. Parker*, 223 Ill. 2d 494, 501 (2006). With respect to IPI Criminal No. 7.15A and IPI Criminal No. 5.01A, defendant argues that, without these specific instructions, the jury instructions failed to accurately convey the applicable law. *People v. Green*, 2017 IL App (1st) 152513, ¶ 61 (our review is *de novo* when the issue concerns whether the jury instructions correctly conveyed the applicable law). Thus, we review this issue *de novo*, which means that "we perform the same analysis that a trial judge would perform." *Green*, 2017 IL App (1st) 152513, ¶ 61. With respect to the other instructions, we apply the abuse-of-discretion standard that is generally applicable to jury instructions. *Pierce*, 226 Ill. 2d at 475.

¶ 35    As noted, the decision regarding whether to give a particular jury instruction generally rests within the sound discretion of the trial court. *People v. Miller*, 2021 IL App (1st) 190060, ¶ 44 (citing *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009)). However, "[a] defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence, and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury." *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). "Very slight evidence upon a given theory of a case will justify the giving of an instruction." *Jones*, 175 Ill. 2d at

132. "In deciding whether to instruct on a certain theory, the court's role is to determine whether there is some evidence supporting that theory; it is not the court's role to weigh the evidence." (Internal quotation marks omitted.) *Jones*, 175 Ill. 2d at 132; *Miller*, 2021 IL App (1st) 190060, ¶¶ 44, 49 (the trial court abused its discretion by refusing to give a proposed instruction although the defendant had "more than met the 'some evidence' standard" of *Jones*). [6]

¶ 36                                    B. IPI Criminal No. 7.15A

¶ 37        Defendant argues, first, that the trial court erred by refusing to give IPI Criminal No. 7.15A, which relates solely to the felony murder count. IPI Criminal No. 7.15A provides:

"A person commits the offense of first degree murder when he commits the offense of ____, and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of ____.

It is immaterial whether the killing is intentional or accidental [(or committed by a confederate without the connivance of the defendant) (or committed by a third person trying to prevent the commission of the offense of ____)]."

¶ 38        The Committee Note for this instruction states that "the supreme court set out the above definition of causation in felony murder cases where the defendant did not perform the acts which caused the death of the deceased." IPI Criminal No. 7.15A, Committee Note. Defendant argues that it was undisputed that he did not perform the acts that caused the death of the deceased and, therefore, the instruction was required in his case.

---

[6]Although a *de novo* standard is justified with respect to the two noted instructions, we find, as we explain below, that, given the very slight evidence needed to justify giving a requested instruction, the result would be the same, no matter which standard we used.

¶ 39          Defendant acknowledges that, with respect to the element of intent, felony murder does not require proof of an intent to kill but rather proof of an intent to commit the underlying felony. See *People v. Davison*, 236 Ill. 2d 232, 239-40 (2010). However, he also notes that Illinois has adopted "the proximate cause theory" as the basis for liability in felony murder. *People v. Lowery*, 178 Ill. 2d 462, 467 (1997); *People v. Hudson*, 222 Ill. 2d 392, 401 (2006) ("the 'proximate cause' theory of felony murder" applies in Illinois). In *Lowery*, our supreme court stated: "this court now holds *** that a felon is liable for the deaths that are a direct and foreseeable consequence of his actions." *Lowery*, 178 Ill. 2d at 467. The court explained the proximate cause theory and its application to felony murder, as follows:

>          "when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act." *Lowery*, 178 Ill. 2d at 467.

¶ 40          In the subsequent case of *Hudson*, our supreme court built upon and further explained the principles discussed in *Lowery*. The *Hudson* court stated that the "[t]erm 'proximate cause' describes two distinct requirements: cause in fact and legal cause." *Hudson*, 222 Ill. 2d at 401. The *Hudson* court stated: "Legal cause 'is essentially a question of foreseeability'; the relevant inquiry is 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " *Hudson*, 222 Ill. 2d at 401 (quoting *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999)) . However, the *Hudson* court found that, "[a]lthough foreseeability is a necessary component of a proximate cause analysis, it need not be specifically mentioned in a jury instruction to communicate the idea of 'proximate' to a jury." *Hudson*, 222 Ill. 2d at 401; *People v. Nash*, 2012 IL App (1st) 093233, ¶ 27 (while

"[f]oreseeability is an essential consideration in a proximate cause analysis, *** explicitly mentioning the term 'foreseeability' in a jury instruction is not necessary to convey the concept of 'proximate' to a jury").

¶ 41        In *Hudson*, the supreme court found that the trial court's instruction on proximate cause was adequate where the instruction stated that a person commits felony murder when, in the course of committing attempted armed robbery, " 'he sets in motion a chain of events which cause the death of an individual.' " *Hudson*, 222 Ill. 2d at 406. The "chain of events" language was taken from *Lowery*, 178 Ill. 2d at 467. Although finding this instruction adequate and, thus, affirming the court below, the supreme court set forth the language that it believed was more precise and accurate and which became IPI Criminal No. 7.15A, quoted above. *Hudson*, 222 Ill. 2d at 408. In the case at bar, the trial court provided neither the "chain of events" language from *Lowery* nor the language crafted by our supreme court in *Hudson* that became IPI Criminal No. 7.15A.

¶ 42        Citing *Nash*, 2012 IL App (1st) 093233, ¶¶ 29, 40, 48, defendant argues (1) that proximate cause is an element of felony murder, (2) that IPI Criminal No. 7.15A is the pattern instruction for this element and that this instruction accurately states the law, and (4), thus, the trial court was required to give it. *Nash*, cited by defendant, does repeatedly refer to proximate cause as an "element" of felony murder. *Nash*, 2012 IL App (1st) 093233, ¶¶ 29, 40, 48. However, in another appellate court case, the court observed that IPI Criminal No. 7.15A "cannot contain an essential element of the offense charged, or, otherwise, it would have to be given in every felony-murder case," and the committee note says it is to be given when causation is an issue. *People v. Walker*, 2012 IL App (2d) 110288, ¶ 22. In *Walker*, the appellate court found that a trial court was not obligated to provide IPI Criminal No. 7.15A

17

*sua sponte*. *Walker*, 2012 Il App (2d) 110288, ¶ 22. In the case at bar, we do not have to determine whether proximate cause is, or is not, an element of felony murder to decide this case because, in the case at bar, defendant specifically requested the instruction and vigorously argued for it in the court below. Defendant's argument that we should recognize proximate cause as an element is broader than needed to find in his favor.

¶ 43    In response, the State does *not* argue either that the instruction is inaccurate or that proximate cause is not an element. Instead, relying almost exclusively on *People v. Watson*, 2021 IL App (1st) 180034, ¶ 50, the State argues that "foreseeability" is not an element of this particular subtype of felony murder. As noted above, *Hudson* divided proximate cause into two parts: (1) cause-in-fact and (2) legal cause which is essentially a question of foreseeability. *Hudson*, 222 Ill. 2d at 401. Based almost exclusively on the appellate court case of *Watson*, 2021 IL App (1st) 180034, ¶ 50, the State argues that this second part, "foreseeability," need not be proven in a particular sub-type of felony murder, namely, when an associate kills.[7]

¶ 44    However, the *Watson* case had nothing to do with jury instructions. In *Watson*, a juvenile defendant argued that due process barred the State from convicting a minor, such as herself, of felony murder when she did not intend and could not foresee that a death would

---

[7]Admittedly, there is not an abundance of case law addressing the issue of whether IPI Criminal No. 7.15A is appropriate when the victim's death is caused by a co-offender. However, we have reviewed cases where IPI Criminal No. 7.15A was given to the jury even though the victim's death was caused by a co-offender, but that was not the issue raised on appeal. *E.g.*, *People v. Brown*, 2015 IL App (1st) 131552, ¶ 33 (the victim was killed by the getaway car driven by a codefendant but did not challenge IPI Criminal No. 7.15A on appeal); see also *People v. Davis*, 2020 IL App (1st) 162644-U, ¶ 19 (a codefendant was the shooter but did not challenge IPI Criminal No. 7.15A on appeal); *People v. Buckley*, 2016 IL App (2d) 140420-U, ¶ 70 (a codefendant was the shooter but did not challenge IPI Criminal No. 7.15A on appeal). A scarcity of appellate court cases on this issue does not necessarily mean that the instruction is rarely given in codefendant cases. On the contrary, it could just as easily mean that, in general, the giving of the instruction is not an issue that defendants find worthy to appeal. See Ill. S. Ct. R. 604(a) (eff. July 1, 2017) (the State is limited as to when it may appeal in criminal cases). The unpublished cases cited here are not cited for their reasoning or logic but rather as examples of trial courts giving this instruction to the jury in co-offender cases.

18

occur. *Watson*, 2021 IL App (1st) 180034, ¶¶ 1, 41. The opinion first rejected her argument on numerous other grounds. *Id*. at ¶ 19 (lack of an adequate factual record), ¶ 25 (lack of legal authority), ¶¶ 27-28, 37 (not a due process argument), ¶ 32 (claim fails under the rational basis test). After rejecting her claim on numerous other grounds, the opinion contained *dicta* regarding when the State is, and is not, required to prove foreseeability for felony murder. *Watson*, 2021 IL App (1st) 180034, ¶¶ 50-51. The *Watson* court identified a particular subtype of felony murder, namely, when an outside actor causes the death, and found that proof of foreseeability was required only in that sub-type of felony murder cases. *Watson*, 2021 IL App (1st) 180034, ¶ 50. Specifically, the appellate court concluded that "the State must prove foreseeability in a felony-murder prosecution only when a third party outside of the criminal actors caused the death." (Internal quotation marks omitted.) *Watson*, 2021 IL App (1st) 180034, ¶ 51.

¶ 45     However, the reasoning in that *dicta* has to be wrong because our supreme court kept the instruction at issue, which instructs on foreseeability in felony murder cases, even though our legislature did away with the particular subtype of felony murder identified by *Watson*.

¶ 46     Illinois Pattern Jury Instructions, Criminal, No. 7.15A (approved July 29, 2022), is titled "Causation In Felony Murder Cases (Use For Cases Where the Offense Is Alleged to Have Occurred Before July 1, 2021)."[8] The difference between this instruction, which applies to pre-2021 offenses like ours, and Illinois Pattern Jury Instructions, Criminal, No. 7.15B (approved July 29, 2022), which applies to current offenses, is that version B no longer has the

---

[8]The version of IPI Criminal No. 7.15A that would have been used at defendant's 2018 trial obviously did not have in its title the phrase "(Use for Cases Where The Offense Is Alleged to Have Occurred Before July 1, 2021)." That phrase is in the title of the current version. However, other than that phrase, the language of the current version of IPI Criminal No. 7.15A matches the language in the version that would have been used at defendant's trial.

clause about a killing "committed by a third person trying to prevent the commission of the offense"—*i.e.*, the very subtype identified in *Watson*. After July 1, 2021, the law changed to specify that it must be the defendant "or another participant [who] causes the death." 720 ILCS 5/9-1(a)(3) (West 2020). In other words, the law removed the very subtype identified in *Watson*. Other than the removal of this subtype from the instruction, the two instructions are identical. Yet, as far as the drafters of this IPI were concerned, the need for this instruction had nothing to do with the presence or absence of this sub-type. The foreseeability portion of the instruction did not change at all.

¶ 47        If the distinction drawn by *Watson*—that the instruction applied only when a third party (*i.e.* not defendant or a codefendant) pulled the trigger—then the need for this instruction should have vanished when the law changed to eliminate this as a basis for felony murder— but the instruction did not vanish at all. Thus, this distinction cannot be what the drafters intended.

¶ 48        This distinction was never correct, as shown by the explanations of our supreme court in *Lowery*. In *Lowery*, our supreme court rejected the agency theory of felony murder, in favor of the proximate cause theory. *Lowery*, 178 Ill. 2d at 466 ("[w]e decline" to adopt an agency theory of felony murder). Under the agency theory, a defendant was responsible for the actions of his agents, whether foreseeable or not, which is what *Watson* was, in effect, stating. See *Lowery*, 178 Ill. 2d at 466-67; *Watson*, 2021 IL App (1st) 180034, ¶¶ 42, 51 (felony murder is strict liability for defendant's agents or associates). However, our supreme court, back in *Lowery*, rejected that theory in favor of proximate cause.

¶ 49        The *Lowery* court began its analysis by stating: "In considering the applicability of the felony-murder rule where the murder is committed by someone resisting the felony, Illinois

20

follows the 'proximate cause theory.' " *Lowery*, 178 Ill. 2d at 465. With that "considering" clause, the court restated the issue before it, namely, whether the felony murder rule applied where the murder is committed by someone resisting the felony, and then followed the question with its answer, namely, that this state follows the proximate cause theory. The appellate court in *Watson* used that one short introductory clause to cap the reach of the whole ensuing *Lowery* opinion. *Watson*, 2021 IL App (1st) 180034, ¶ 50. However, the supreme court did not intend that clause to limit the reach of its reasoning and logic, as made clear by the supreme court's repeated and sweeping statements about "the felony-murder doctrine" in general, without limitation as to any subtype. *Lowery*, 178 Ill. 2d at 469. The supreme court spoke broadly, stating:

> "We believe that the analogies between civil and criminal cases in which individuals are injured or killed are so close that the principle of proximate cause applies to both classes of cases. Causal relation is the universal factor common to all legal liability." *Lowery*, 178 Ill. 2d at 466.

Without limitation as to type of felony murder, the supreme court stated: "A felon is liable for those deaths which occur during a felony *and which are the foreseeable consequence* of his initial criminal acts." (Emphasis added.) *Lowery*, 178 Ill. 2d at 467, 470 (the *Lowery* court held "that a felon is liable for the deaths that are a direct and foreseeable consequence of his actions"). The supreme court repeatedly spoke in broad terms about "doctrine," for example stating that, "[b]ased on the plain language of the felony-murder statute, legislative intent, and public policy, we decline to abandon the proximate cause theory of the felony-murder doctrine." *Lowery*, 178 Ill. 2d at 469. In *Lowery*, proximate cause attached to the entire doctrine of felony murder, without limit to a particular subtype. Even if arguably *dicta*, *dicta* by our

highest court is binding upon us, not optional. *City of Aurora v. Greenwood*, 2022 IL App (2d) 210341, ¶ 24 ("supreme court *** *dicta* is clearly binding on this court"); *REEF-PCG*, *LLC v. 747 Properties, LLC*, 2020 IL App (2d) 200193, ¶ 25 (*dicta* by the supreme court is binding in the absence of a contrary decision by the supreme court); *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing LLC*, 2017 IL App (1st) 162459, ¶ 20 ("we are not free to ignore the *dicta* of our supreme court").

¶ 50    When the trial court in the case at bar initially ruled on IPI Criminal No. 7.15A, it accepted the instruction and stated that this instruction was important.[9] It is important. It goes to the heart of what constitutes felony murder in this state: whether it is a strict-liability offense or whether it embodies the tort concepts of proximate cause. *Lowery* answered that question back in 1997. *Lowery*, 178 Ill. 2d at 466. The committee note states that the instruction must be given when causation is an issue. IPI Criminal No. 7.15A, Committee Note . In the case at bar, defendant made causation an issue. *Cf. Walker* 2012 IL App (2d) 110288, ¶ 22 (IPI Criminal No. 7.15A was not required *sua sponte* where the defendant did not argue causation in the court below).

¶ 51    Not only did defendant make it an issue, but there was more than some evidence to support his theory. *Jones*, 175 Ill. 2d at 132 (in deciding whether to instruct on a certain theory, the court's role is to determine whether there is some evidence supporting that theory; it is not the court's role to weigh the evidence); *Miller*, 2021 IL App (1st) 190060, ¶¶ 44, 49 (the trial court abused its discretion by refusing to give a proposed instruction although the defendant had "more than met the 'some evidence' standard" of *Jones*). The 'some evidence' included testimony presented by both the State and defendant that this offense was intended to be a

_____

[9] The trial court, at first, accepted the instruction, and then later changed its mind to reject it.

simple 'snatch and grab,' akin to shoplifting, *i.e.* snatching tendered goods without paying for them, rather than an armed offense. At trial, three of the four men involved in the theft—defendant, Hughes, and Smith—everyone but Hicks, the shooter—testified that they intended to simply grab the marijuana offered for sale and flee. Hughes and Smith were testifying for the State, so the testimony about a 'snatch-and-grab' was not simply a defense theory, but at the very heart of the State's case. Although a death may be a foreseeable consequence of a chain of events set in motion by a planned armed robbery (see, *e.g.*, *Lowery*, 178 Ill. 2d at 469-70), whether the same could be said of an intended shoplifting or similar offense is a question of fact for the jury. As a result, whether under a *de novo* standard or an abuse-of-discretion standard, we have no choice but to find that the trial court erred when it ultimately refused the tendered instruction, because there was more than some evidence to support it.

¶ 52     Having found error, we must consider whether the State satisfied its burden on appeal of showing that this error was harmless beyond a reasonable doubt. A harmless error analysis applies when the defendant has made a timely objection in the court below and raised the issue again in a posttrial motion. See *People v. Herron*, 215 Ill. 2d 167, 175, 181-82 (2005). In the case at bar, the State has not argued that defendant failed to preserve the error, so the State has forfeited any possible forfeiture argument that it had. *People v. Knight*, 2020 IL App (1st) 170550, ¶ 47 n.9 (" 'The State may forfeit a claim of forfeiture by failing to raise it.' " (quoting *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47)); *Bahena*, 2020 IL App (1st) 180197, ¶ 29 (a list of cites to other cases for the same proposition); *People v. Reed*, 2020 IL 124940, ¶24 ("Issues of waiver are construed liberally in favor of the defendant."). In a harmless error analysis, "the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error." (Internal quotation marks omitted.) *Herron*, 215 Ill. 2d at 181-

82. Although the State did not make a harmless error argument with respect to this error, it did argue with respect to other errors that they were harmless in light of overwhelming evidence of defendant's guilt.

¶ 53        While there was other evidence regarding legal cause, or the foreseeability issue, it was not overwhelming. The primary evidence about a possible gun came from Ly, and it was underwhelming. Ly testified that, at the end of September 2014, he was texting with defendant regarding who had "weed" and that, on September 23, 2014, Ly texted Spitz's telephone number to defendant. On September 24, 2014, defendant texted Ly that defendant wanted to "rob" another individual named "Gdai."[10] Ly texted back that he, Ly, had "been trying to" because Gdai owed Ly money. Defendant texted back that he and "Nick" would rob Gdai with "poles" and take a quarter pound of marijuana from him. Ly testified that "poles" meant guns, and Ly texted defendant: "Bring a pole." While defendant bragged in a text conversation that he would rob with a gun, Ly testified that he had never known defendant to have a gun and that they had known each other since elementary school. Ly testified that the texting about a "pole" was "tough talk," and that he (Ly) actually did not want anyone to bring a "pole." Ly admitted that he was not being "honest" when he texted that, and that he (Ly) never had a gun. Ly also admitted to lying when he texted that he had "been trying to" rob Gdai; he was not trying; he said that to sound tough.

¶ 54        In contrast to Ly's underwhelming testimony about a "pole," defendant and the State's event witnesses testified unequivocally that their plan was for a mere 'snatch and grab.' Myles Hughes, who was in Spitz's car during the shooting, testified that "the plan" was for him to "take the weed and run." Hughes had no intent to use force of any kind and the first time that

---

[10]Ly testified that Gdai was another drug dealer that he and defendant knew.

Hughes saw a gun that night was when Hicks pulled one out, which was "a surprise" to Hughes. Hughes testified that he would not have exited defendant's vehicle with Hicks if he knew Hicks had a gun.

¶ 55        Similarly, Smith, another State witness, testified that defendant stated, when the four of them were in defendant's car, " 'it's just gonna be a snatch and grab. We just want to grab the weed and leave.' " Smith testified that, when Hicks and Hughes exited defendant's car, he believed that Hicks had a gun because he saw Hicks "clutching." "Clutching" means "when you hold onto it and then pull up your pants." However, Smith did not testify that he conveyed this suspicion to defendant. Smith did testify however, that defendant "planned this" but did not plan on a gun or weapon of any kind.

¶ 56        Defendant testified that he never had a gun, and he did not know that Hicks had one. The plan was for Hughes to grab the marijuana and run, and defendant reiterated the plan before Hughes exited the car to meet Spitz. However, Hicks, "out of left field, just jump[ed] out of the car with [Hughes]," and defendant did not know Hicks had a gun. Defendant had never met Hicks before the day of the shooting; defendant assumed Hicks was friends with Hughes and Smith because defendant had seen them talking at a barbecue. Defendant testified, with respect to the shooting, that he "never *** foreseen this ever happening."

¶ 57        Given the conflicting evidence on the legal cause issue, we cannot find that the trial court's ultimate decision not to give this instruction was harmless error. Thus, we must remand for a retrial on the felony murder count.

¶ 58                            C. IPI Criminal Nos. 2.01, 2.01B

¶ 59            Defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of robbery.[11] This argument again affects the felony murder count. Specifically, he argues that the jury should have been instructed with (1) IPI Criminal No. 2.01, which states that the defendant is charged with a particular offense and has pled not guilty, and (2) Illinois Pattern Jury Instructions, Criminal, No. 2.01B (approved Dec. 8, 2011), which states that the defendant has been charged with first degree murder as well as another offense.

¶ 60            Our supreme court has found that, "[a]ccording to Illinois law, the predicate felony underlying a charge of felony murder is a lesser-included offense of felony murder." *People v. Smith*, 233 Ill. 2d 1, 17 (2009); *People v. Skaggs*, 2019 IL App (4th) 160335, ¶ 38 (our supreme court "has consistently held the predicate offense underling felony murder is a lesser-included offense of felony murder"). A defendant is entitled to have the jury instructed on a less serious charge if that offense is included in the charged offense. *People v. Echols*, 382 Ill. App. 3d 309, 313 (2008). However, a trial court does not abuse its discretion in denying a requested lesser offense instruction if no rational jury could have convicted defendant of the lesser offense but acquitted him of the charged offense. *Echols*, 382 Ill. App. 3d at 315.

¶ 61            On appeal, the State does *not* argue either that robbery is not a lesser included offense or that there is no evidence of robbery. Obviously, the State could not argue that there was a lack of evidence of robbery at trial since it named armed robbery in the indictment as the felony supporting the felony murder charge and argued this offense to the jury. Instead, the State argues on appeal that defendant did not present evidence of robbery, since he argued at trial that he committed a simple theft. In this section of its appellate brief, the State cites only one

---

[11]Before the trial court, defendant argued for lesser included offense instructions for theft and attempted theft, as well as robbery, which the trial court denied. On appeal, defendant argues only for instructions on the lesser included offense of robbery.

case in support: *Echols*, 382 Ill. App. 3d 309. However, *Echols* does not stand for the proposition that a court must consider only the evidence introduced by defendant on this issue. To the contrary, the *Echols* court considered all the evidence presented at trial, to assess what was and was not proven. *Echols*, 382 Ill. App. 3d at 315.

¶ 62      In the case at bar, the trial court instructed the jury:

"A person commits the offense of robbery when he, or one for whose conduct he is legally responsible, knowingly takes property from the person or the presence of another by the use of force or by threatening the imminent use of force."

¶ 63      Defendant argues that if the lesser included offense instructions had been given, he could have argued both (1) that defendant did not commit felony murder because defendant did not commit a felony but rather a simple theft; and (2), in the alternative, if the jurors found that he committed a robbery, then they should find him guilty of robbery rather than murder, because of a lack of proximate cause.

¶ 64      If the proximate cause instruction, IPI Criminal No. 7.15A (that we just discussed), had been given, defendant could have argued that the jurors should not find him guilty of felony murder if they found either (a) a lack of legal cause *or* (b) that he committed a simple theft instead of robbery. If the lesser-included offense instruction had been given, and if the jurors found (b) robbery instead of theft, but did not find (a) legal cause, they could have acquitted him of felony murder, while still finding him guilty of robbery.

¶ 65      The key to understanding how the jurors could find defendant accountable for robbery while acquitting him for felony murder is understanding that the proximate cause theory underlying felony murder is different from the accountability or agency theory underlying guilt for the robbery.

¶ 66     In the accountability instruction given in this case, which no one objects to on appeal, the trial court instructed that a defendant "is legally responsible for" a partner's conduct "when either before or during the commission of an offense and with the intent to promote or facilitate the commission of an offense," the defendant "knowingly solicits, aids, abets, agrees to aid or attempts to aid" his partner "in the planning or commission of an offense." Similarly, when our supreme court cited an example of the agency theory that it was rejecting for felony murder, it cited a New Jersey case that explained that a defendant was liable under an agency theory if he "participates in the killing, or does so through the agency of a partner in the crime, whether as a principal or an aider and abettor, whether directly or indirectly, by acts or conduct in furtherance of the commission of the felony." *State v. Canola*, 374 A.2d 20, 22 (N.J. 1977); see *Lowery*, 178 Ill. 2d at 466 (citing *Canola*, 374 A.2d at 20, 23). The words "cause" and "foreseeable" are absent from these instructions.

¶ 67     While accountability or agency is the theory underlying liability for robbery, proximate cause is the theory underlying liability for felony murder. That is how the jury could have found defendant guilty of the former and not the latter. Since the jury could have found defendant guilty of robbery while acquitting him of felony murder, the trial court erred by refusing to provide this requested instruction. *Echols*, 382 Ill. App. 3d at 315. Since the State does not argue that defendant failed to preserve this error for our review, the State bears the burden of proving this error harmless beyond a reasonable doubt. *Herron*, 215 Ill. 2d at 181-82. The State did not argue harmlessness specifically with respect to this error but did argue overwhelming evidence with respect to other errors. For the reasons that we already explained in the prior section, the evidence regarding legal cause and felony murder was far from

overwhelming and, thus, the State failed to carry its burden of showing harmlessness. This error further supports our conclusion that a reversal and remand are required.

¶ 68                                    D. IPI Criminal No. 5.01A

¶ 69        Defendant next argues that the trial court erred by refusing to give IPI Criminal No. 5.01A, the pattern instruction on intent. As opposed to the instructions that we just discussed above, this instruction concerns solely the attempted murder count. The trial court refused the instruction on the ground that the court found the wording of the instruction "confusing." Specifically, the trial court stated: (1) "That's a confusing instruction," (2) "I am reading it and I am slightly confused," (3) "I don't even understand that one," and (4) "I don't understand it, to be honest." IPI Criminal No. 5.01A provides, in relevant part: "A person intends to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct." The State argued that the applicable committee notes took no position as to whether this definition should be routinely given in the absence of a specific jury request. On appeal, the State argues, based largely on *People v. Powell*, 159 Ill. App. 3d 1005, 1013, (1987), that there was no error in the trial court's refusal.

¶ 70        In *Powell*, the supreme court stated: "In order to convict a defendant of attempted murder, the jury must be instructed that the defendant had a specific intent to kill." *Powell*, 159 Ill. App. 3d at 1013. "However," the court observed, "the jury need not be instructed on the terms knowingly and intentionally because those terms have a plain meaning within the jury's common knowledge." *Powell*, 159 Ill. App. 3d at 1013. The supreme court held: "As long as the trial court gives an accurate attempted murder instruction, which contains the element of specific intent to kill, any alleged error in the instructions is minimized." *Powell*, 159 Ill. App. 3d at 1013.

¶ 71        However, there are differences between *Powell* and the case at bar. First, when *Powell* was decided, there was no pattern instruction on intent for the trial court to give, as there is now. *Powell*, 159 Ill. App. 3d at 1014 (the trial court had stated " 'as far as your instructions are concerned, we do not have a separate and distinct definition of intent' "); *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL App (1st) 093547-B, ¶ 104 ("the *Powell* court could not have relied on a pattern jury instruction" because an applicable one "did not yet exist"). Second, the *Powell* court found that, "where evidence of a defendant's guilt is so clear and convincing that a jury could not reasonably have found the defendant not guilty, an error in the instructions does not require reversal." *Powell*, 159 Ill. App. 3d at 1013; *Le Mirage*, 2013 IL App (1st) 093547-B, ¶¶ 104-06 (while the trial court erred in failing to give the instruction, defendant failed to preserve the error and failed to show that the evidence on intent was closely balanced, so that reversal was not required). On the facts in front of it, the *Powell* court found reversal unnecessary, where (1) the defendant had failed to preserve the error and (2) the evidence against him was "so clear and convincing" that the error did not require reversal. *Powell*, 159 Ill. App. 3d at 1013-14. By contrast, in the case at bar, the evidence regarding defendant's specific intent to murder Spitz was not "so clear and convincing," and the error in the case at bar was preserved for our review. See *Powell*, 159 Ill. App. 3d at 1013-14.

¶ 72        In the case at bar, the trial court did not refuse the instruction because the word "intent" was commonly understood, but rather because the trial court disagreed with the manner in which the drafters had handled the concept. In essence, the trial court found the instruction inaccurate. A trial court may refuse an instruction if it finds that the instruction does not accurately or fairly state the law. See *People v. Tisley*, 341 Ill. App. 3d 741, 745 (2003); Ill. S.

Ct. R. 451(a) (eff. Apr. 8, 2013) (a trial court may refuse a pattern instruction that does not accurately state the law and must provide instructions that are "impartial" and "free from argument"). However, the parties have not cited case law for the proposition that this instruction is confusing or inaccurate, nor do we find the instruction confusing ourselves. Thus, the trial court erred in refusing this instruction as inaccurate or confusing. In light of the different intents and theories underlying the two counts charged at trial, and in light of the fact that no one testified and none of the evidence indicated that defendant had a specific intent to murder Spitz, and that his liability for this count is predicated on his accountability for Hicks's acts, we cannot find this error harmless.

¶ 73                                F. Nonpattern Instruction

¶ 74         Defendant argues that the trial court erred by refusing a nonpattern jury instruction that he tendered.[12] In his appellate brief, defendant does not provide a cite in the appellate record where we can find his proposed nonpattern instruction. However, he quotes the proposed instruction in his appellate brief, and the State does not dispute the accuracy of his quote. In fact, the State restates its quote in its own brief. Thus, we accept the parties' representation of the words that were requested, for purposes of this appeal. Defendant's appellate brief states the requested instruction, as follows:

> "You have heard testimony that Jeremy Ly, Myles Hughes, and Nicholas Smith have pled guilty to some of the charges the defendant is also facing. You may not consider any of their guilty pleas as evidence against the defendant."

---

[12]Although we have already found reversal required on other grounds, we consider the following because the issue could arise at a subsequent retrial.

¶ 75   In support of this proposed nonpattern instruction, defendant cites the federal Seventh Circuit Court of Appeals cases of *United States v. Johnson*, 26 F.3d 669, 677 (7th Cir. 1994), and *United States v. Carraway*, 108 F.3d 745, 756 (7th Cir. 1997) (*per curiam*). In *Johnson*, counsel for codefendants mentioned in their opening statements, allegedly without advance discussion, the fact that a nontestifying codefendant had pled guilty. *Johnson*, 26 F.3d at 677. The Seventh Circuit observed that, while the guilty plea of a codefendant may not be used as substantive evidence of another defendant's guilt, a testifying codefendant's plea may be introduced for the limited purpose of assessing that witness' credibility. *Johnson*, 26 F.3d at 677. However, the need to assess credibility was not at issue, because the argument on appeal concerned a nontestifying codefendant. *Johnson*, 26 F.3d at 677. The Seventh Circuit advised that when a reference is made to a nontestifying codefendant's guilty plea, "defense counsel is well-advised to request a prompt cautionary instruction from the trial court." *Johnson*, 26 F.3d at 677. The Seventh Circuit stressed that a defense counsel's objection should be "timely and specific," occurring as soon as the fact is introduced, so that the trial court has the opportunity to rectify it immediately with a limiting instruction to the jurors. *Johnson*, 26 F.3d at 677. As an example of such a limiting instruction, the court cited *United States v. Blevins*, 960 F.2d 1252, 1260 (4th Cir. 1992), where the court held that a trial court "upon request should issue a limiting instruction to jurors stating that the evidence of such guilty pleas is not to be taken as substantive evidence of guilt of the remaining defendant[ ]." However, in *Johnson*, where the defendants failed to ask promptly for a limiting instruction, where the trial judge did advise the jury later that the guilty pleas " '*are not to be considered in any way as evidence against these defendants*,' " and where the evidence was "overwhelming," any error from the mention of a

32

nontestifying codefendant's guilty plea was harmless beyond a reasonable doubt. (Emphasis in original.) *Johnson*, 26 F.3d at 678-79.

¶ 76     Like *Johnson*, *Carraway* also concerned nontestifying codefendants. In *Carraway*, the Seventh Circuit found that the trial court erred by admitting into evidence the pleas of nontestifying codefendants, but that the error was harmless where the evidence of guilt was overwhelming, and the trial court instructed the jurors not to consider the pleas as evidence against the defendants. *Carraway*, 108 F.3d at 756. See also Seventh Cir. Court of Appeals Pattern Jury Instructions, Criminal, No. 3.05 (2012 ed.) ("You may not consider his guilty plea as evidence against the defendant.").

¶ 77     Defendant also cited several state cases for the proposition that the State may not use the guilty plea of a codefendant as evidence of the guilt of the accused. *E.g.*, *People v. Sullivan*, 72 Ill. 2d 36, 42 (1978) (a codefendant's admission of guilt is "generally inadmissible as evidence of another defendant's guilt"). For example, in *Sullivan*, cited by defendant, the prosecutor mentioned, in opening statement, the guilty pleas of two codefendants who later took the fifth during trial. *Sullivan*, 72 Ill. 2d at 39-40. During the State's initial closing statement, the prosecutor argued that " 'if you think [defendant] was innocent, why was he with those two guys that are in prison now who pled guilty.' " *Sullivan*, 72 Ill. 2d at 40. Defense counsel responded in his closing that the mere fact that defendant was with these two codefendants did not necessarily mean he was guilty. *Sullivan*, 72 Ill. 2d at 40-41. In the State's rebuttal closing, the prosecutor doubled down on this argument, asserting that the defendant was " 'just as guilty of armed robbery as any of the other two that have already pled guilty.' " *Sullivan*, 72 Ill. 2d at 41. Although the defendant failed to object during the trial and failed to file a posttrial motion, thereby forfeiting the error, our supreme court found that the

prosecutor's statements "constituted a single continuous error which deprived defendant of a fair and impartial trial." *Sullivan*, 72 Ill. 2d at 42. The supreme court found that the prosecutor's misconduct, in urging the jury to convict based on "guilt by reference" to the others' pleas, should have triggered a prompt limiting instruction from the trial judge. *Sullivan*, 72 Ill. 2d at 43-44.

¶ 78        The cited cases indicate that a jury instruction may be used to try to neutralize a possible misuse of guilty pleas by the State or other codefendants. However, in the case at bar, the pleas at issue were from testifying codefendants whose pleas may be considered by the jury for the purpose of assessing their credibility. In addition, defendant does not argue a misuse of their pleas by the State to suggest that he must be guilty because his associates pled guilty. Under these circumstances, we cannot find that the trial court abused its discretion in finding that a cautionary instruction was not necessary in this case.

¶ 79        In addition, we must observe that, if defendant is correct that such an instruction has been used in our sister federal courts in Illinois for decades, then it is telling that our state supreme court has chosen not to create a comparable pattern instruction for its own courts, particularly when the plea and cooperation of codefendants is such a common occurrence.

¶ 80        For the foregoing reasons, we do not find compelling defendant's argument of error with respect to his requested nonpattern instruction. As for his argument concerning error by the trial court in response to a specific jury question, we do not address it, because we have already found reversible error, and the same question is unlikely to arise at retrial.

¶ 81                    III. Double Jeopardy and Sufficiency of the Evidence

¶ 82        Lastly, defendant argues that the evidence against him was insufficient. When a reviewing court reverses a criminal conviction, and the defendant has contended that the

evidence against him was insufficient, the reviewing court should decide this question, because double jeopardy may bar a retrial. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979) ("When an appellate court reverses a criminal conviction and remands the case for a new trial without deciding defendant's contention that the evidence at the first trial was insufficient, we believe that the court risks subjecting the defendant to double jeopardy."); *People v. Kotlarchik*, 2022 IL App (2d) 200358, ¶¶ 14, 22. The double jeopardy clause of the fifth amendment to the United States Constitution bars a person from being put in jeopardy of life or limb twice for the same offense; and it applies to the states through the fourteenth amendment. *People v. Bellmyer*, 199 Ill. 2d 529, 536-37 (2002) (discussing U.S. Const., amends. V, XIV). The clause has been interpreted to bar a state from retrying "a defendant once it has been determined that the evidence introduced at trial was insufficient to sustain a conviction." *People v. Lopez*, 229 Ill. 2d 322, 367 (2008).

¶ 83       When a court reviews the sufficiency of the evidence, we must view the evidence in the light most favorable to the state and decide whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). In performing this task, we need not "search out all possible explanations consistent with innocence." *Jackson*, 232 Ill. 2d at 281.

¶ 84       We are unpersuaded by defendant's arguments of insufficiency. On appeal, defendant argues that the evidence is insufficient because he should not be held liable for Hicks's acts. At trial, the undisputed evidence established that Hicks committed armed robbery, murder, and attempted murder and that, prior to these events, he took actions with defendant. The issues here concern primarily defendant's liability for Hicks's acts, namely, legal cause for the felony

murder and accountability for the attempted murder. While the evidence on these issues was not overwhelming, it was also not insufficient. The evidence established that defendant intended to steal from Spitz; that Hicks was part of the group that defendant drove to a site for the express purpose of stealing from Spitz; that Smith testified that defendant "planned this"; that the four men, including defendant, divided up the marijuana after the shooting; that Smith was able to correctly determine, simply based on his visual observation of Hicks as Hicks exited defendant's car, that Hicks was armed with a gun; and that, whether fake bravado or not, defendant and Ly had texted previously about stealing from another person using "poles" or guns. Based on this evidence, we cannot find that no rational person could have found defendant liable for these crimes.

¶ 85                                CONCLUSION

¶ 86        For the foregoing reasons, we reverse and remand for a new trial consistent with this opinion. The trial court erred by refusing to provide the following pattern jury instructions which were requested by defendant: (1) IPI Criminal No. 7.15A regarding proximate cause and felony murder; (2) IPI Criminal Nos. 2.01 and 2.01R regarding a lesser included offense, specifically, robbery; and (3) IPI Criminal No. 5.01A, regarding the specific intent required for attempted murder. These errors were preserved for our review and were not harmless. Due to the sufficiency of the evidence, double jeopardy does not bar a retrial.

¶ 87        Reversed and remanded.

¶ 88        JUSTICE TAILOR, specially concurring:

¶ 89        I agree with the majority's decision to reverse and remand for a new trial but write separately to explain why, in this case, we need not decide whether, under the version of the felony murder statute in effect at the time of the offense, foreseeability is an element of a

36

typical felony murder case, such as this, where the victim was killed by the defendant's second party confederate. Because the State concedes that foreseeability may be an issue in a second party felony murder case, the only issue before us is whether there was some evidence to support instructing the jury on Illinois Pattern Jury Instructions, Criminial, No. 7.15A (approved Jan. 30, 2015) (hereinafter IPI Criminal No. 7.15A).

¶ 90    Avdic argues that the trial court erred by refusing to give IPI Criminal No. 7.15A, which relates solely to his felony murder count. Avdic claims that Gadau's death was not foreseeable where Avdic was not aware that his second party confederate Hicks had a gun in his possession during the commission of the armed robbery, a forcible felony. Avdic argues that nothing in the instructions conveyed to the jury the requirement that, in order for him to be found guilty, Gadau's death had to be a foreseeable consequence of Avdic's actions. According to Avdic, the court's failure to instruct the jury using IPI Criminal No. 7.15A requires a new trial.

¶ 91    The version of the felony murder statute in effect at the time of Gadau's death provided in relevant part as follows: "[a] person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death," "he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a)(3) (West 2016). The committee comments to section 9-1 of the Criminal Code of 1961 state: "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant. *** or even by a third person trying to prevent the commission of the felony." 720 ILCS Ann. 5/9-1, Committee Comments-1961, at 12-13 (Smith-Hurd 1993). Additionally, the committee comments state: "[Felony murder] is well established in Illinois to the extent of recognizing the forcible felony as so inherently dangerous that a homicide occurring in the course thereof, even though accidentally, *should be*

37

*held without further proof to be within the 'strong probability' classification of murder.*" (Emphasis added.) 720 ILCS Ann. 5/9-1, Committee Comments-1961, at 15 (Smith–Hurd 1993).

¶ 92    The purpose of the felony murder statute is to "deter persons from committing forcible felonies by holding them responsible for murder if a death results." *People v. Dennis*, 181 Ill. 2d 87, 105 (1998). Felony murder imposes "the broadest bounds for the attachment of criminal liability" and is unconcerned with whether the defendant intended to cause the death. *Id.* " 'A defendant may be found guilty of felony murder regardless of a lack either of intent to commit murder [citation], or even connivance with a codefendant [citation].' " *People v. Klebanowski*, 221 Ill. 2d 538, 552 (2006) (quoting *Dennis*, 181 Ill. 2d at 105-06 (1998)); *People v. Watson*, 2021 IL App (1st) 180034, ¶ 40 (felony murder statute "is not concerned with the defendant's intent to commit murder, only [his] intent to commit the underlying felony"). In other words, "[d]o not commit the underlying felony, *** because if something goes wrong and someone is killed, you will be liable for that death, whether you intended it or not." *Watson*, 2021 IL App (1st) 180034, ¶ 40.

¶ 93    In *Watson*, the court stated that felony murder generally follows strict liability principles. *Id.* ¶ 42; *People v. Mandoline*, 2017 IL App (2d) 150511, ¶ 154. That means that "[t]he State is not required to prove that the defendant could foresee the death or that the defendant intended to commit murder." *People v. Causey*, 341 Ill. App. 3d 759, 769, (2003); see *People v. Bone*, 103 Ill. App. 3d 1066, 1068-69 (1982) ("For purposes of felony (armed robbery) murder, there is no requirement that the State prove a mental state element for the underlying offense. [Citation.] Thus, no mental state element as such need be proved to obtain

the felony-murder conviction. [Citation.] The defendant is held strictly liable for felony-murder upon proof of the armed robbery.").

¶ 94    In *People v. Lowery*, 178 Ill. 2d 462 (1997), in a unique fact situation involving a death caused by third-party intervener, our supreme court reviewed the felony murder doctrine and affirmed use of the "proximate cause theory" of felony murder first crafted in *People v. Payne*, 359 Ill. 246 (1935), and reaffirmed in *People v. Allen* 56 Ill. 2d 536 (1974), and *People v. Hickman*, 59 Ill. 2d 89 (1974). Lowery was charged with felony murder where the death was caused not by the defendant or one of his second party accomplices but, rather, by the robbery victim himself, a third party. The victim picked up the defendant's gun after the robbery, shot at the defendant, and accidentally killed an innocent bystander. *Lowery*, 178 Ill. 2d at 464-65. The *Lowery* court found that "the analogies between civil and criminal cases in which individuals are injured or killed are so close that the principle of proximate cause applies to both classes of cases. Causal relation is the universal factor common to all legal liability." *Id.* at 466. The court held that under this "proximate cause theory," a defendant may be convicted of felony murder only if the State proves that the victim's death was a "direct and foreseeable consequence" of the defendant's actions. *Id.* at 467.

> "In considering the applicability of the felony-murder rule where the murder is committed by someone resisting the felony, Illinois follows the 'proximate cause theory.' Under this theory, liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity—notwithstanding the fact that the killing was by one resisting the crime." (Emphasis added.) *Id.* at 465.

¶ 95    The following year, in *People v. Dekens*, 182 Ill. 2d 247 (1998), our supreme court extended the proximate cause theory to instances where a third-party police officer kills the

victim. There, the parties stipulated that an undercover officer arranged to buy narcotics from the defendant. Prior to meeting the undercover officer, the defendant and his co-felon developed a plan to rob the officer. During the transaction, the defendant pointed a gun at the officer, and the officer fired several shots at the defendant. The co-felon then grabbed the officer, and the officer shot and killed the co-felon. *Id.* at 248. The defendant argued that the "felony-murder doctrine should not apply when the person killed in the felony is an accomplice of the defendant." *Id.* at 253.

¶ 96        The *Dekens* court reaffirmed the court's prior holdings on proximate cause in felony murder cases, stating:

> "Although *Lowery*, *Hickman*, *Allen*, and *Payne* did not address the precise question raised in this appeal, we believe that our case law compels application of the felony-murder doctrine to the circumstances of this case. As *Lowery* noted, Illinois follows the proximate cause theory of felony murder, as opposed to the agency theory. Consistent with the proximate cause theory, liability should lie for any death proximately related to the defendant's criminal conduct. Thus, the key question here is whether the decedent's death is the direct and proximate result of the defendant's felony. As our cases make clear, application of the felony-murder doctrine does not depend on the guilt or innocence of the person killed during the felony or on the identity of the person whose act causes the decedent's death." *Id.* at 252.

¶ 97        In drawing its conclusion, the *Dekens* court noted the committee comment to section 9-1 of the Criminal Code of 1961 that states, " 'It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony.' "

*Id.* at 254 (quoting 720 ILCS Ann. 5/9-1, Committee Comments-1961, at 12-13 (Smith-Hurd 1993)).

¶ 98        Subsequently, in *People v. Hudson*, 222 Ill. 2d 392 (2006), a nonpattern jury instruction in a felony murder trial where Hudson's co-felon was shot and killed by an off-duty police officer who was a patron of a barbershop that Hudson and his co-felon attempted to rob while armed. The instruction given included the phrase, "[the defendant] set in motion a chain of events which cause[d]" the death of the victim, regardless of whether the death was " 'intentional or accidental' " and explained the law regarding legal causation. *Id.* at 413. Ultimately, the *Hudson* court found that the modified jury instruction sufficiently communicated the concept of proximate cause to the jury. In doing so, the court explained the proximate cause doctrine as outlined in *Lowery* in terms of cause-in-fact and legal cause components. The court found legal cause to be " 'essentially a question of foreseeability' "; the relevant inquiry is " 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " *Id.* at 401 (quoting *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999)). The court also concluded that foreseeability should be included in the cause-in-fact requirement because " 'even when cause in fact is established, it must be determined that any variation between the result intended *** and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result.' " *Id.* (quoting 1 Wayne R. LaFave, Substantive Criminal Law § 6.4, at 464 (2d ed. 2003)).

¶ 99        *Hudson* further found *Dekens* to stand for the proposition that "language adopted in the committee comments is tantamount to a definition of the legal-cause component of proximate cause, and therefore coextensive with foreseeability." *Id.* at 406. The phrase " 'It is immaterial

41

whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant * * * or even by a third person trying to prevent the commission of the felony' is integral to our proximate cause analysis in this state." *Id.* Therefore, the foreseeability requirement must be satisfied in cases where a third party causes a death during the commission of a felony. *Id.* at 400, 408.

¶ 100        Since *Lowery*, *Dekens* and *Hudson*, other Illinois court have found that the State must only prove foreseeability in felony murder cases when "a third party outside of the criminal actors caused the death," not when a second party confederate caused the death. *Mandoline*, 2017 IL App (2d) 150511, ¶ 157; *Watson*, 2021 IL App (1st) 180034, ¶ 42.

¶ 101        With that backdrop in mind, we now turn to Avdic's argument regarding the trial court's decision not to give IPI Criminal No. 7.15A. At the time of trial, IPI Criminal No. 7.15A provided:

"A person commits the offense of first degree murder when he commits the offense of ___, and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of ___.

It is immaterial whether the killing is intentional or accidental [(or committed by a confederate without the connivance of the defendant) (or committed by a third person trying to prevent the commission of the offense of ___)]."

The Committee Note for this instruction states that "the supreme court set out the above definition of causation in felony murder cases where the defendant did not perform the acts which caused the death of the deceased." IPI Criminal No. 7.15A, Committee Note.

¶ 102        *Mandoline* determined that the foreseeability element outlined in *Lowery*, and included in Illinois Pattern Jury Instructions, Criminal, No. 7.15A (4th ed. Supp. 2011), must be met

only in cases where a third party outside of the criminal actors caused the death. *Mandoline*, 2017 IL App (4th) 150511, ¶ 157; *Watson*, 2021 IL App (1st) 180034, ¶ 41 ("[T]he felony-murder statute does not punish the wrongdoer based on what was or was not reasonably foreseeable."); *Causey*, 341 Ill. App. 3d at 769 (State is not required to prove that the defendant could foresee the death); see also *Hudson*, 222 Ill. 2d at 406 (co-felon killed by third party off-duty police officer; jury instructed on reasonable foreseeability); *Klebanowski*, 221 Ill. 2d at 555 (co-felon being killed by third party off-duty police officer was foreseeable consequence of the defendant's acts); *People v. Nash*, 2012 IL App (1st) 093233, ¶¶ 25-28 (Illinois Pattern Jury Instructions, Criminal, No. 7.15A (4th ed. Supp. 2011) was properly delivered to the jury where the co-felon had been shot by a third party police officer).

¶ 103     That begs the question: does IPI Criminal No. 7.15A's foreseeability requirement apply in a case like this where a second-party co-felon causes a death during the commission of a felony and the defendant claims he was unaware that his co-felon was armed? Stated differently, is foreseeability an element of a typical felony murder case where the victim's death is caused by a second-party confederate?

¶ 104     I note that this case was set for argument specifically on the jury instruction issues raised by Avdic. At argument, the State pivoted from its earlier position—that foreseeability is never an element of second-party felony murder—and conceded that there may be instances where the State is required to establish foreseeability in a second-party felony murder case. Although the State initially argued that *People v. Kessler*, 57 Ill. 2d 493 (1974), stands for the proposition that felony murder is a strict liability offense, it later conceded that there are some circumstances where foreseeability is an issue in a second party felony murder case.

¶ 105   In *Kessler*, the defendant and two co-felons planned to burglarize a closed tavern. *Id.* at 494-95. The defendant stayed in the car while the two co-felons went inside. *Id.* at 494. The tavern owner was present when the co-felons entered and one of the co-felons shot the owner with a gun he found at the tavern. *Id.* at 495. The two co-felons ran back to the car, and they sped away from the scene. *Id.* A police chase ensued, and one of the co-felons drove the car into a ditch. *Id.* The two co-felons then fled on foot. *Id.* The defendant, meanwhile, stayed in the car. *Id.* As the co-felons were running away from the car, one of them shot at a police officer. *Id.* The defendant was arrested and eventually found guilty of burglary, as well as the attempted murder of both the tavern owner and the police officer. *Id.*

¶ 106   On appeal, this court was called upon to determine whether the defendant could " 'be found guilty on accountability principles without proof of his specific intent to commit the attempt murders perpetrated by [his companions].' " *Id.* (quoting *People v. Kessler*, 11 Ill. App. 3d 321, 325 (1973)). After reviewing the accountability statute, this court held that:

> " 'except in felony-murder cases, the [Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, ¶ 5-2)] does not impose liability on accountability principles for all consequences and further crimes which could flow from participation in the initial criminal venture, absent a specific intent by the accomplice being held accountable to commit, or aid and abet the commission of, such further crimes.' " *Id.* at 495-96 (quoting *Kessler*, 11 Ill. App. 3d at 325-26).

Accordingly, we reversed the defendant's convictions for attempted murder. *Id.* at 495.

¶ 107   Our supreme court disagreed and found that the defendant's convictions for attempted murder were proper, reasoning that:

"the burglary was the offense which [the defendant and his companions] had jointly planned and were jointly committing, and each was legally accountable for the conduct of the other in connection therewith. The result was the offense of attempted murder of [the tavern owner] and of [the police officer], who answered a report of the incident and who tried to apprehend the fleeing parties." *Id.* at 499.

¶ 108    As the State acknowledged at oral argument, IPI Criminal No. 7.15A or its application to second or third party felony murder was not at issue in *Kessler*. Moreover, when asked, the State conceded that there are some circumstances where IPI Criminal No. 7.15A would be appropriate based on a co-felon's actions, like in *Kessler*, where foreseeability was a central issue given the facts of the case. Despite this concession, the State maintained that it was unnecessary to instruct the jury on IPI Criminal No. 7.15A in this case because foreseeability was not an issue where the evidence established that Avdic "knew and intended for [Hicks] to have a gun."

¶ 109    The State's concession was based on the bracketed language of IPI Criminal No. 7.15A, which, at argument, the parties agreed accurately states the law. Again, IPI Criminal No. 7.15A states in pertinent part: "It is immaterial whether the killing is intentional or accidental [(*or committed by a confederate without the connivance of the defendant)* (or committed by a third person trying to prevent the commission of the offense of _____)]." (Emphasis added.) The option to add language that it is immaterial whether the killing is "committed by a confederate without the connivance of the defendant" may suggest that foreseeability could be an issue in a second party case such as this. One might argue that contrary to the holdings in *Mandoline*, *Watson* and *Causey*, foreseeability is an element of second party felony murder because it is expressly contemplated in IPI Criminal No. 7.15A. If foreseeability were limited

to third party felony murder cases, then there would be no reason to include the bracketed second party language in the instruction. Likewise, the statement in the Committee Note that the supreme court set out the definition of causation in felony murder cases contained within IPI Criminal No. 7.15A "where the *defendant* did not perform the acts which caused the death of the deceased" could reasonably be understood to mean that IPI Criminal No. 7.15A is required in both second and third party felony murder cases. (Emphasis added.) IPI Criminal No. 7.15A, Committee Note. If IPI Criminal No. 7.15A applies only to third party felony murder cases, then presumably the drafters of the instruction would have stated that it applied where the defendant or his confederates did not perform the act which caused the death of the decedent.

¶ 110     On the other hand, it could be that IPI Criminal No. 7.15A does not accurately state the law, and Illinois employs a hybrid approach—strict criminal liability for second-party felony murder and proximate cause criminal liability for third-party felony murder. In any case, we are not required to address that legal question because the State concedes that foreseeability may be an issue in certain second party felony murder cases.

¶ 111     To be clear, I express no opinion on the legal soundness of the State's concession or whether IPI Criminal No. 7.15A accurately states the law. Likewise, although the majority expresses its disagreement with *Mandoline* and *Walker*, I do not read the majority's opinion to hold that foreseeability is an element of every second party felony murder case either. *Supra* ¶ 42 ("In the case at bar, we do not have to determine whether proximate cause is, or is not, an element of felony murder to decide this case because, in the case at bar, defendant specifically requested the instruction and vigorously argued for it in the court below. Defendant's argument

that we should recognize proximate cause as an element is broader than needed to find in his favor.").

¶ 112     The only issue properly before this court is whether Avdic offered some evidence that he could not foresee that Hicks would shoot and kill Gadau in the course of the armed robbery. Like the majority, I find there is some evidence to warrant instructing the jury on foreseeability under IPI Criminal No. 7.15A. Therefore, I agree with the majority that the trial court erred in not instructing the jury on IPI Criminal No. 7.15A and that this error requires reversal.

---

***People v. Avdic*, 2023 IL App (1st) 210848**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-4904-01; the Hon. Lauren G. Edidin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Damon M. Cheronis and Ryan J. Levitt, of Cheronis, Parente & Levitt LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |

---