2025 IL App (1st) 221275
Nos. 1-22-1275, 1-22-1902 and 1-23-0113, cons.
Order filed September 12, 2025

FIFTH DIVISION

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE EQUITRADE GROUP, INC. and JAIME ANGULO, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | Nos. 19 L 002342 & 19 MI 500953, cons. |
| JOHN D. BEAM, MARGARET M. HUNN and ROZOVICS GROUP, L.L.P., | ) ) ) | The Honorable Michael F. Otto, |
| Defendants | ) ) | Judge, presiding. |
| [The Equitrade Group, Inc. and Leon Zelechowski, Appellants, Margaret M. Hunn and Rozovics Group, L.L.P. Appellees]. | ) ) ) ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirm the trial court's grant of summary judgment and sanctions, finding no genuine issue of material fact to bar summary judgment and no abuse of discretion in the trial court's imposition of Rule 219 sanctions.

¶ 2

¶ 3　　　　In short, this case concerns a company buyout where one owner, plaintiff Jaime Angulo, bought out the other owner, defendant John D. Beam. The purchaser, Angulo believes he paid too much and so he and the company (now his company) sued the company's accounting firm, as well as Beam, his former partner. While this opinion concerns only the accounting firm, it nonetheless is related to three consolidated appeals, as explained below.

¶ 4　　　　First, on March 25, 2022, the trial court granted summary judgment in favor of the accounting defendants, Margaret M. Hunn and Rozovics Group, L.L.P. and dismissed with prejudice The Equitrade Group, Inc.'s (Equitrade's) count IV (negligent misrepresentation) and count VII (negligence), thereby resolving all pending counts against defendants Hunn and Rozovics. On July 15, 2022, the trial court made an express written finding pursuant to Illinois Supreme Court Rule 304(a) that there was no just reason for delaying enforcement or appeal. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). On August 15, 2022, Equitrade filed a notice of appeal that was assigned No. 1-22-1275 and, thus, became the first appeal.

¶ 5　　　　Second, on August 1, 2022, the trial court agreed with defendants Hunn and Rozovics' motion for sanctions, on the ground that plaintiffs and their counsel Leon Zelechowski knew or should have known from the start that all the claims against defendants Hunn and Rozovics were fatally flawed. After Hunn and Rozovics submitted a fee petition, the trial court permitted plaintiffs and Zelechowski 21 days or until September 12 to object or respond, but they did not. On September 22, 2022, the trial court found that any objections to the reasonableness of the fee petition had been waived by the failure to object and that, even if there had been no waiver, the fees were reasonable. In its written order, the trial court "enter[ed] a sanctions award against Plaintiff Equitrade and counsel Zelechowski, jointly and severally, in the amount of $59,672.00." On November 22, 2022, the trial court denied Equitrade and Zelechowski's

motion to reconsider and found no just reason to delay appeal. On December 14, 2022, Equitrade,[1] by and through its new counsel, filed a notice of appeal from the sanctions order that was assigned No. 1-22-1902 and, thus, became the second appeal.

¶ 6        Third, on January 18, 2023, Zelchowski moved for leave to file a late notice of appeal which the appellate court granted on February 14, 2023. This appeal was assigned No. 1-23-0113 and thereby became the third appeal.

¶ 7        On April 6, 2023, this court granted Equitrade's motion to consolidate its two appeals (nos. 1-22-1275 and 1-22-1902).  On April 20, 2023, this court granted Zelchowski's motion to consolidate his appeal (1-23-0113) with the two pending Equitrade appeals. For the following reasons, we affirm the trial court's grant of summary judgment and sanctions.

¶ 8                                  BACKGROUND

¶ 9        Defendant Equitrade alleges in its appellate brief that its third amended complaint is the "operative complaint" for this appeal. While two of its counts were the subject of the summary judgment at issue, the trial court granted sanctions on the ground that Equitrade and Zelchowski knew or should have known from the start that all the claims against defendants Hunn and Rozovics were fatally flawed.  Thus, we begin with plaintiff's initially filed complaint.

¶ 10                                I. The Parties

¶ 11       Equitrade's initial complaint, by and through its counsel Zelechowski, was filed March 1, 2019. The complaint alleged that Equitrade was an Illinois corporation in the export management business, concentrating in the sales of branded American food products to customers in Central and South America and that, until October 2017, Angulo, one of the

---

[1]Plaintiff Jaime Angulo has not filed a notice of appeal.

plaintiffs, and Beam, one of the defendants, each owned 50% of the outstanding shares of the company. The complaint further alleged that, in October 2017, Angulo purchased Beam's shares and became the sole owner.

¶ 12    The complaint alleged, and defendants Hunn and Rozovics later admitted in their answer, that Rozovics was a certified public accounting firm located in Park Ridge, Illinois, that Hunn was a certified public accountant (CPA) who worked for Rozovics, that Rozovics prepared tax returns for Equitrade, that Hunn provided additional services, and that Hunn was the primary accountant at Rozovics who performed services for Equitrade.

¶ 13                        II. Initial Complaint

¶ 14    The initial complaint was filed March 1, 2019, "by and through" Zelchowski. Zelechowski signed it on behalf of both Equitrade and Angulo. The complaint was accompanied by a "Verification" signed by Angulo certifying "that the statements set forth" in the complaint were "true and correct," except for those stated upon information and belief which "he verily believes *** to be true."

¶ 15    The complaint alleged the following: At some time prior to March 2017, Beam expressed an interest in selling his shares to Angulo and resigning his position with the company. Beam claimed that the company owed him a substantial amount of money for loans that he had made to it starting in 1993 and that this amount needed to be taken into account when determining the price of his shares. As a result, Beam asked Hunn to prepare a summary of the debt allegedly owed to him. On March 8, 2017, Hunn emailed the summary to Beam and Angulo. The summary had two lists attached, which were titled: "Loan Activity" and "Calculation of Interest on Shareholder Loan."

¶ 16    The complaint alleged that the claimed debt owed to Beam was a major and material factor in the parties' final valuation of the shares and their calculation of the ultimate sales price, and that Hunn's summary was inaccurate or false. The complaint set forth three counts: (I) breach of fiduciary duty against Beam, (II) intentional misrepresentation by Hunn, and (III) negligent misrepresentation by Hunn.  For counts II and III, plaintiffs sought judgment from both Hunn and Rozovics.

¶ 17    III. Third Amended Complaint

¶ 18    After a couple of successful motions to dismiss by Hunn and Rozovics, plaintiffs, by and through Zelechowski, moved for leave to file their third amended complaint.  On January 20, 2021, their motion was granted in part and denied in part. They received permission to file counts I, II, IV and VII, but not counts III, V and VI.  Of the four permitted counts, two were against defendant Beam, who is not a party to this appeal.

¶ 19    The two permitted counts against Hunn and Rozovics were (IV) negligent misrepresentation and (VII) negligence.  Count IV concerned the March 8, 2017, summary (described above), which plaintiffs alleged contained false statements and which they alleged they relied on to assign a value to Beam's shares. Count VII alleged that Hunn and Rozovics generated inaccurate financial information in "QuickBooks" and other corporate financial documents and overstated the amount of money that Equitrade owed to Beam. QuickBooks was not defined in the third complaint. However, the initial complaint alleged that, as part of its engagement by Equitrade, Rozovics maintained a QuickBooks file for the company, and entered and coded the company's financial information into it.

¶ 20    The third amended complaint, like the initial complaint, was signed by Zelechowski on behalf of Equitrade and Angulo. However, the third amended complaint did not contain a verification by Angulo, as the initial complaint had.

¶ 21    In their answer, filed January 12, 2021, defendants denied, among other things, that the summary contained a false statement of material fact and that Angulo actually relied on it in assigning a value to Beam's shares.

¶ 22                        IV. Summary Judgment

¶ 23    On March 25, 2021, "for the reasons stated in open court," the trial court granted summary judgment in favor of Rozovics and Hunn on the two counts remaining against them, namely, count IV for negligent misrepresentation and count VII for negligence.

¶ 24    At the hearing, counsel for defendants Rozovics and Hunn argued first, since it was their motion. Defendants asserted that "the entire case centers around this March 8 [2017] calculation of the amount of [Beam's] loans and interest." They argued that, for both of the remaining counts, plaintiffs had to show reasonable reliance and, first, there was no reliance by Angulo on the summary and, second, any reliance was not reasonable.

¶ 25    Defendants claimed that there were numerous caveats by Hunn in her emails, attached as exhibits, which stated that she did not have all the records. Defendants argued that there was immediate questioning and pushback by Angulo, who had three professionals working for him: a CPA, an accounting professor, and an "MBA." Defendants argued that, in March 2017, a couple of weeks after the summary, Rozovics and Hunn terminated their relationship with Equitrade, and Angulo did not speak with Hunn again before the transaction was completed later that year. On September 9, 2017, before the transaction, Angulo sent an email to his attorney, Zelechowski, stating: "It seems to me that this loan is completely bogus."

Defendants argued that Angulo knew that Hunn lacked documentary support and that Angulo relied instead on the reassurance provided by Beam in September to go forward with the deal. For these reasons, defendants argued that there was no reliance by Angulo on Hunn. Second, defendants argued that Angulo could not claim reasonable reliance where he had an opportunity to investigate and did so, with three professionals to aid him.

¶ 26    In response, Zelechowski, on behalf of plaintiffs, argued that Angulo kept asking Hunn to provide documents and she did not provide any; therefore, there was no independent investigation because they lacked the documents to investigate. The court interrupted and noted that Zelechowski's client had described these loans as bogus "contemporaneously." Zelechowski acknowledged that this was true, but that his client "went forward and had these meetings with Mr. Beam who reassured him that those numbers were--were right." The court responded that, assuming that Beam, in fact, reassured Zelechowski's client, that meant that Angulo relied on Beam. The court noted that one of the headings in Zelechowski's brief was titled " 'Ang[u]lo reasonably relied on Beam's assurances that the summaries were accurate and correct.' "

¶ 27    Zelechowski responded that "Beam and Hunn worked together to create this false report," and that Hunn had been the company's accountant for over 20 years with "a duty to provide accurate information." He argued, "when you don't have enough information, you don't issue a report." Zelechowski claimed that, when Angulo "pushed" Hunn for information, "she walks away."

¶ 28    The court stated that the fact that Angulo asked for more information and did not get it does not "help[] your case." The court noted that Angulo "suspected" and "questioned" the numbers and yet Zelechowski was "relying on the fact that he asked Hunn for more information

7

and didn't get it." The court queried: "How does that possibly make your case that there was reliance let alone reasonable reliance?"

¶ 29    Zelechowski answered that Angulo received a report from Hunn, who had been the company's accountant for 20 years, and then received Beam's assurances. Counsel stated that "Mr. Beam's assurances that the information is correct, it basically advances the ball forward as far as my client is concerned." Zelechowski explained:

> "In September of 2017, my client was basically looking at a situation where [Beam,] his confidant, his friend and business partner for 25 years was saying the numbers are right, and it was reasonable for him to assume the numbers were correct based upon Mr. Beam's reassurances.
>
> He didn't get the necessary confirmation from Ms. Hunn, but getting the reassurances from Mr. Beam was second best under the circumstances."

¶ 30    Zelechowski argued that "the three individuals that supposedly did the investigation, there was nothing to investigate because there was no--no documents." The court noted "that was the point, that there was no backup for these numbers." Zelechowski said that was "hindsight." The court disagreed, noting that this was what his client was "saying at the time," by calling the loans "bogus." Zelechowski responded that this was a question of fact. The court replied that it was not a question of fact "where only one reasonable inference could be drawn from the facts."

¶ 31    In rebuttal, defendants stated that the basis of their motion was not whether the numbers are accurate," or whether or not defendants owed a duty, or whether or not there was a breach. They argued that the only issues were whether there was reliance and, if so, whether it was reasonable.

¶ 32    In response to a question by the court, Zelechowski acknowledged that, before speaking to Beam, Angulo investigated first by reaching out to Hunn for documents. Zelechowski noted that emails established Angulo's unsuccessful attempts to obtain documents from Hunn.

¶ 33    Before making its ruling, the court observed that, normally, questions of reliance and reasonable reliance are questions of fact for a trier of fact.  However, the court found that there was no question "on this record that there was no reliance on Ms. Hunn's representations." The court found that there was reliance on Beam, "if anyone."  Second, the court found that, even if a question of material fact could be raised with respect to reliance, there was no question that the reliance was not reasonable "given the numerous red flags that had been raised for Mr. Angulo."  In conclusion, the trial court stated:  "There is no genuine issue of material fact, and these defendants are entitled to judgment as a matter of law."

¶ 34                                   V. Sanctions

¶ 35    On August 1, 2022, the trial court granted defendants' motion for sanctions against Equitrade and Zelechowski. When imposing sanctions under Illinois Supreme Court Rule 137, the trial court must issue a written explanation of its reasons (Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018)), which the court did here.

¶ 36    In its written order imposing sanctions, the trial court relied primarily on the September 9, 2017, email from Angulo to his then-attorney Zelechowski, in which Angulo called Hunn's summary "completely bogus."  The court observed that Zelechowski was "the same attorney who ha[d] represented Plaintiffs from the outset in the lawsuit."  The court noted that Angulo "cc'd Calandra and Vasilo on the email," thereby destroying any claim of attorney-client privilege. Carl Canlandra and Michael Vasilou were two of the professionals, along with Tony Pagliuco, who advised Angulo and Equitrade about the validity and amounts of the alleged

loans by Beam. The order pointed out that Zelechowski, as plaintiff's counsel, had conceded at the sanctions hearing that this "cc" rendered the email unprivileged.

¶ 37    At the sanctions hearing on July 15, 2022, the parties discussed the fact that the September 9, 2017, email was disclosed, not by plaintiffs, but by Vasilou, one of the "cc'd" people, in response to a subpoena. At the hearing, Zelechowski, appearing as plaintiff's counsel, addressed plaintiff's failure to disclose it in discovery. Zelechowski conceded that he had remembered the email, but had forgotten that others were copied on it, and so had mistakenly believed it was subject to the attorney-client privilege and, therefore, had withheld it from discovery. Zelechowski stated at the hearing that he was not asserting that the email was a privileged communication. While acknowledging that he had not identified the email in a privilege log, Zelechowski argued that neither side had produced a privilege log.

¶ 38    In its written order, the court noted that plaintiffs' "failure to identify the document and their basis for withholding it" was "a blatant violation of Illinois Supreme Court 201(o)," and constituted a separate and independent ground for sanctions. The order quoted Rule 201 which provides in relevant part, that, when a document is withheld from discovery on a claim of privilege, the claim "shall be made expressly" with a description of the document and the privilege asserted. Ill. S. Ct. R. 201(n) (eff. May 29, 2014). The order also cited Rule 219(c) which provides, in relevant part, that, if a party unreasonably fails to comply with discovery rules or orders, the court may impose upon the party "or his or her attorney, or both, an appropriate sanction," which may include the "reasonable expenses incurred" as a result, including attorneys' fees. Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 39    It was under Rule 137 that Hunn and Rozovics had moved for sanctions, and the trial court granted sanctions on that basis as well.  The court found that Angulo's September 9,

2017, email "destroyed any possibility that Plaintiffs could recover from the Accountant Defendants." The court stated: "It was unreasonable for Plaintiffs and their counsel to have brought the claims at the time the original complaint was filed, and at the time of each of the subsequent re-filings."

¶ 40　　In the September 9, 2017, email, Angulo stated that "[i]t seems to me that this loan is completely bogus." In the email, Angulo went on to observe that "there is absolutely [no] documentation or paperwork supporting this loan, much less anything to substantiate the cumulative interest on the loan--no dates, no notarized promissory note, no cancelled checks, no bank transfers, nothing." Angulo wondered "why we should be giving credence to this loan."

¶ 41　　In addition to quoting the email, the court's written order noted that the three professionals advising Angulo and Equitrade (Pagliuco, Calandra and Vasilou) raised concerns about the loans' validity, and that there was no follow-up with Hunn and Rozovics after these three advisors flagged concerns. The court found that the email, by itself, eliminated any claim of reliance and that the flagged concerns further undercut any assertion that reliance, if any, was reasonable. In light of all these facts, which occurred and were known before any complaint was filed, the court found that the claims against Hunn and Rozovics should never have been filed.

¶ 42　　After granting the motion for sanctions, the August 1, 2022, order gave Hunn and Rozovics 21 days, or until August 22, to file a petition for attorneys' fees, and plaintiffs 21 days, or until September 12, to file a response. Hunn and Rozovics filed their petition on August 9, almost two weeks ahead of the due date. On August 26, 2022, Zelechowski filed a

motion for leave to withdraw as plaintiffs' counsel, which was granted on September 14, 2022. On September 20, 2022, James McGurk filed a notice of "substitute appearance,"

¶ 43     On September 22, 2022, the trial court issued an order stating that neither plaintiffs nor Zelechowski had filed any response or objection by their September 12 deadline and that, "to date," neither of them had "filed any motion for an extension of time to do so." As a result, the court found that they had "clearly waived any objections to the reasonableness of the [fee] Petition." Further, the court found that, even if there was no waiver, the fees were reasonable. In finding the petition reasonable, the court noted, first, that although defendants could have sought an award for all "the fees expended in defending this meritless lawsuit," they had not done so, and had sought instead only the fees incurred in connection with their dispositive motions and their motion for sanctions. Second, the court found the billing rates charged and the amount of time expended were "reasonable for defense of an accountant malpractice claim in the Chicago, Illinois legal market over the years 2019-2022."

¶ 44     Lastly, the September 22 order "enter[ed] a sanctions award against Plaintiff Equitrade and counsel Zelechowski, jointly and severally, in the amount of $59,672.00." At 4:55 p.m. on September 22, 2022, Equitrade's new counsel filed a motion for an extension of time to respond to the sanctions petition. At a hearing on November 22, 2022, the trial court said that it took new counsel at his word that counsel had communicated his intent to the other parties to file a motion for an extension of time, but that "intend[ing] to file a Motion for Extension *** is not the same as filing a Motion for Extension."

¶ 45     At the November 22, 2022, hearing, the trial court denied Equitrade and Zelechowski's motion to reconsider, finding that the motion largely reargued the grant of summary judgment, which had already been appealed on August 15, 2022, and was beyond

12

the trial court's jurisdiction. Even if not beyond the court's jurisdiction, the trial court said that it still found the outcome proper. The court found that the motion's other arguments challenged the propriety of sanctions, which was an issue that had already been fully briefed and decided. In its written order, the court found no just reason for delaying either enforcement or appeal of the sanctions orders.

¶ 46                                                           ANALYSIS

¶ 47                                                    I. Summary Judgment

¶ 48        First, Equitrade appeals the trial court's grant of summary judgment against it and in favor of Hunn and Rozovics. Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmovant, fails to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. *Zurich American Insurance Company v. Infrastructure Engineering, Inc.,* 2023 IL App (1st) 230147, ¶ 17; 735 ILCS 5/2-1005(c) (2022).  On appeal, a reviewing court will consider *de novo* the trial court's decision to grant summary judgment. *Zurich*, 2023 IL App (1st) 230147, ¶ 17.  *De novo* review means that we perform the same analysis that a trial court would. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25.  "Regardless of the trial court's reasoning, we my affirm on any basis in the record." *Wilson v. University of Chicago Medical Center*, 2023 IL App (1st) 23078, ¶ 19.

¶ 49        At the time of the summary judgment motion, Angulo and Equitrade had only two counts remaining against Hunn and Rozovics:  negligence; and negligent misrepresentation. In dismissing these counts, the trial court found that Angulo did not rely on Hunn's summary and that, even if he had, any reliance was not reasonable.

¶ 50                                              II. Count VII: Negligence

¶ 51          Equitrade's first argument is that the trial court erred in dismissing its negligence count because reasonable reliance is not an element of negligence. However, Equitrade did not argue to the trial court that the court and defendants had the elements wrong; thus, this argument is forfeited.  Equitrade did not raise this argument in its summary judgment response, or at the summary judgment hearing, or in a motion to reconsider. "It is well settled that a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal." *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 24.  See also *Unique Insurance Co. v. Tate*, 2022 IL App (1st) 210491, ¶ 22.

¶ 52          In its reply brief, Equitrade responds weakly that it "did not waive its negligence claim." However, Equitrade does not assert that it made the elements argument which it makes now, in response to defendants' summary judgment motion.  Thus, it is forfeited.

¶ 53          Equitrade's reply brief also notes that the rules of forfeiture are a limitation on the parties, not the courts, and urges us to consider the issue anyway. While it is true that rules of forfeiture are a limitation on the parties and not the courts, we do not carve out exceptions lightly. *Walsh v. Sklar*, 2025 IL App (1st) 231830, ¶ 60. The power to override "should not be a catchall that confers upon reviewing courts unfettered authority to consider forfeited issues at will."  *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 33.  We may sometimes override considerations of forfeiture, when needed to further the ends of justice or maintain a uniform body of precedent.  *Walsh v. Sklar*, 2025 IL App (1st) 231830, ¶ 60.

¶ 54          First, there is no need to override here in order to maintain a uniform body of precedent. Equitrade is correct that the elements of a negligence claim are familiar and well-established: (1) duty, (2) breach, (3) causation, and (4) damages. *MC Baldwin Financial Co. v. DiMaggio,*

*Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14 (2006) (identifying these as the elements of a professional negligence claim against an accounting firm). Second, there is no need to override to further the ends of justice, where the losing party was a corporate entity which was represented at all times by counsel, where it chose not to file a motion to reconsider, and where substitution of new counsel occurred after the notice of appeal was filed and the matter, in effect, closed. Thus, Equitrade forfeited the issue on which the trial court dismissed its negligence claim, and we do not find a reason to override the normal rules of forfeiture.[2]

¶ 55    Even if we found that the elements argument was not forfeited or found that there was a reason to override, we would still affirm the dismissal of this count. Whether one focuses on reliance or causation, the outcome is the same. One of the elements of negligence is causation. *MC Baldwin*, 364 Ill. App. 3d at 14. As we explain below, for the same reasons that there was no reliance, there was also no causation. *Supra* ¶¶ 59-61; *MC Baldwin, LLC*, 364 Ill. App. 3d at 19 (to support a cause of action for professional negligence, some injury must have been sustained due to the defendant).

¶ 56                        III. Count IV: Negligent Misrepresentation

¶ 57    To state a cause of action for negligent misrepresentation, plaintiffs must allege: (1) a false statement of material fact; (2) defendants' carelessness or negligence in ascertaining the truth of the statement; (3) defendants' intention to induce plaintiffs to act; (4) reasonable

---

[2] While Equitrade's appellate briefs focus on the March 8, 2017, summary, the negligence count in the third amended complaint did also allege that the company's QuickBooks were inaccurate and failed to provide accurate information regarding the loans. Zelechowski's appellate brief argues that this count went beyond the summary to include a breach of care and incorrect accounting entries. However, in his March 8, 2022, affidavit, Angulo explained why the alleged loans were not reflected on the company's books. Angulo averred that, when he met with Beam on September 28, 2017, the day before the buyout, Beam told him that Beam was "reluctan[t] to record the loans on the Company's books out of fear that such disclosure would negatively impact the Company's standing." Thus, according to Angulo, the reason for the loans' absence on the company's books was a deliberate decision by Beam, rather than negligence.

reliance by plaintiffs on the truth of the statement; and (5) damage to plaintiffs resulting from their actual reliance on the statement. *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 43.

¶ 58      In the case at bar, defendants' summary judgment motion ignored most of these elements. Defendants sought judgment only on the ground that there was no actual reliance and, even if there was, such reliance was not reasonable. Not only did defendants seek judgment on this limited basis, but this was also the limited basis upon which it was granted. Thus, we too limit our analysis to this ground.

¶ 59                            A. Actual Reliance

¶ 60      Defendants' appellate brief spills a fair amount of ink arguing that Equitrade waived the issue of actual reliance. It is true that, in its initial appellate brief, with respect to count IV, Equitrade skipped over the issue of actual reliance and headed straight to the issue of reasonable reliance. However, Equitrade claimed with respect to Count VII, simple negligence, that there was causation and, in its reply brief, it noted that the same facts which related to causation also related to reliance. Thus, we find no waiver on this issue by Equitrade.

¶ 61      Equitrade claims that Hunn's "false Loan Summary caused it to overpay" Beam. However, this claim is undercut by the facts conceded in Equitrade's brief. In considering whether there is an issue of material fact, we may consider the facts conceded in a party's brief. *Cf. Arvia v. Madigan*, 209 Ill. 2d 520, 529 (2004) (in concluding that there was no genuine issue of material fact, the court relied on the concession "reflected in the State's brief"). The following quotes are from Equitrade's brief to us. "[Equitrade's][3] advisors noted problems

---

[3] The word "Equitrade" is in brackets when quoting appellant's brief because the brief capitalizes the word differently than how it appears in the rest of the record.

with the [Hunn] Loan Summary, including *** the overall lack of any supporting documentation." "Beam's alleged loans to [Equitrade] were never documented; no written loan agreements existed, and the loans had not previously been entered in the company's books or reported on its tax returns." "Angulo continued to be skeptical of the [Hunn] Loan Summary but wanted to complete Beam's buyout." To recap, the red flags conceded by Equitrade include: (1) multiple advisors immediately noting problems with the summary; (2) the lack of any supporting documents; (3) no written loan agreements; (4) no entry of the loans in the company's books; and (5) no reflection of them on the company's tax returns.

¶ 62    As a result, in his September 9, 2017, email to his attorney, Angulo concluded that the loans and the summary of them were "completely bogus." In his affidavit, dated March 8, 2022, Angulo averred that, in response to the email, Zelechowski directed him to direct his concerns to Beam directly, i.e. not Hunn. This made sense because, in March 2017--only a couple of weeks after the summary--Rozovics and Hunn had terminated their relationship with Equitrade, Equitrade's brief notes that, following Zelechowski's advice, "Beam and Angulo discussed the buyout in person on September 13 and September 28, 2017." Equitrade's brief observes that, the next day, "[t]he transaction closed on September 29, 2017."

¶ 63    With Hunn's departure months before the buyout, and with all the red flags surrounding her summary, which led to Angulo's contemporaneous conclusion that the loans were completely bogus, it is almost impossible to draw a line of causation between Hunn's summary and any alleged damages from the buyout.

¶ 64    Just because the issue of actual reliance concerns what Angulo believed does not mean that summary judgment is out on the element of actual reliance. Since "no one has direct access to another person's mind, one can only infer, from circumstantial evidence, that another

person has knowledge of a fact." *Pekin Insurance Co. v. Adams*, 343 Ill. App. 3d 272, 276 (2003). In *Adams*, for example, an issue was whether Amanda, a renter, knew and believed she had a dog when she signed an application for renter's insurance. The court found no countervailing evidence in the record that she was unaware of having a dog. Thus, the court found "no genuine issue as to whether Amanda actually knew and believed she had a dog." *Pekin*, 343 Ill. App. 3d at 276. Similarly, when Angulo realized the summary had no documentary back-up, he knew he had a dog, so to speak.

¶ 65                                 B. Reasonable Reliance

¶ 66            Summary judgment is also appropriate on the element of reasonable reliance. The element of reasonable reliance is also called justifiable reliance, with these two terms being used interchangeably. *Abazari v. Rosalind Franklin University of Medicine and Science*, 2015 IL App (2d) 140952, ¶ 14; *Neptuno Treuhand-Und Verwaltungesgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 575 (1998) ("justifiable reliance" requires proof that "any reliance was reasonable"). In determining whether reliance is reasonable, courts look to all the relevant circumstances surrounding the alleged misrepresentation. *Newton v. Aiken*, 260 Ill. App. 3d 717, 721 (1994)(dissolution of a joint venture) (citing *Seefeldt v. Millilkin National Bank*, 154 Ill. App. 3d 715 (1987)). Generally, it is only where parties do not have equal knowledge or means of obtaining knowledge of the facts that a person may justifiably rely on them. *Id*. A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another. *Id*. *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 560-61 (2003); *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125-26 (1995).

¶ 67     A plaintiff must exercise ordinary prudence. "In assessing whether reliance was justifiable, all facts known to the plaintiff and those facts plaintiff could have learned through the exercise of ordinary prudence must be taken into account." *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 37; *Adler.*, 271 Ill. App. 3d 117, 125 (1995). A plaintiff may justifiably rely if the defendant created a false sense of security or blocked further inquiry--"provided that the facts were not such as to put a reasonable person on inquiry." *Los Amigos Supermarket, Inc. v. Metropolitan Bank and Trust Co.*, 306 Ill. App. 3d 115, 128 (1999).

¶ 68     Equitrade's appellate brief argues that the key fact is "Angulo's state of mind," and therefore summary judgment is barred. However, that is not true. The reliance must be reasonable, and reasonableness is judged against the standard of the objective reasonable person--not against the subjective standard of the plaintiff's own mind. "The issue of reasonable reliance is not a *per se* question of fact." *Ringgold*, 2013 IL App (1st) 121702, ¶ 37. "[P]laintiff's own factual allegations," for example, may establish that the alleged reliance was unreasonable as a matter of law." *Ringgold*, 2013 IL App (1st) 121702, ¶ 37.

¶ 69     Equitrade argues that Angulo's September 9 email, stating that Hunn's summary and the loans were "completely bogus," does not show his state of mind at the time of the buyout. However, the buyout occurred before the month was out, and the key intervening facts were his discussions with Beam--not Hunn. Rarely in a lawsuit does one have such a contemporaneous expression of state of mind for a transaction, which is later regretted, as we have with the September 9 email.

¶ 70     All the reasons discussed in the prior section, which show no actual reliance, also show that any reliance was not reasonable. In addition, Hunn wrote prior to the summary that she lacked information about Beam's loan; and, after the March 8, 2017, summary, three

19

professionals questioned it. On February 28, 2017, about a week before the summary, Hunn sent Angulo an email stating: "What doesn't seem to be apparent to you is that I don't have the history for John's loan nor for your loan. In preparing the tax returns, we return all the original documentation to the clients, and it is their responsibility to keep the documentation." In the transmittal email accompanying the summary, Hunn gave the disclaimer that she had done "as best as could be done with the information available." On March 9, 2017, the day after the summary, Vasilou, one of the three advisors, sent Angulo an email questioning the interest rate used. On March 14, 2017, about a week after the summary, Pacliuco, a CPA, sent an email asking: "Is there a written agreement?" The email further advised Angulo what steps to take in order to verify if the loan amounts are accurate. On September 5, 2017, less than a month before the buyout, Calandra wrote to Angulo: "We said from the beginning that John's loans and interest were bogus, but used them to make him happy." Still, Calandra wrote: "We need to 'Close the Deal' now."

¶ 71          In its reply brief, Equitrade attempts to distinguish *D.S.A. Finance* and similar cases which held that a party cannot ignore what it knows, on the ground that those cases involved arms-length transactions rather than an existing relationship of trust. However, any trust argument is not supported by the admitted facts, where Hunn and Rozovics terminated their existing relationship with Angula, almost immediately after the summary and long before the buyout. Further, they did not respond to requests for supporting documents, which was part of what led Angulo to conclude that the summary they provided was completely bogus. Rather than lulling someone into a false sense of security, these facts were enough to put a reasonable person on inquiry.

¶ 72 For all these reasons, there is no genuine issue that reliance, if any, was not reasonable or justified.

¶ 73 II. Sanctions

¶ 74 Second, Equitrade and Zelechowski also appeal the trial court's grant of sanctions pursuant to Illinois Supreme Court Rules 137, 201, and 219. Ill. S. Ct. R. 137 (eff. Jan. 1, 2018), 201 (eff. May 29, 2014, 219 (eff. July 1, 2002).

¶ 75 A. Standard of Review

¶ 76 With respect to Rule 219 sanctions, both Equitrade and Zelechowski acknowledge that we may reverse only if the "record establishes a clear abuse of discretion" by the trial court. *County Line Nurseries and Landscaping, Inc., v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 42. An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 23.

¶ 77 With respect to Rule 137 sanctions, the decision is also generally within the sound discretion of the trial court. *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 63. As a result, we will generally not disturb the trial court's decision unless the trial court abused that discretion. *Appel*, 2021 IL App (1st) 192523, ¶ 63; *Nolan v. Hearthside Homebuilders, Inc.*, 2020 IL App (1st) 182492, ¶ 83.

¶ 78 While Zelechowski notes that, with Rule 137 sanctions, there may be "circumstances" that warrant *de novo* review, his arguments are all made under the abuse-of-discretion standard. In contrast, Equitrade argues that the trial court's decision to impose sanctions was based on documentary submissions alone, thereby warranting *de novo* review. However, where the

21

case would be affirmed under both an abuse of discretion and de novo standards of review, we have no need to consider which standard of review applies. *See Grasso v. Mueller*, 2022 IL App (2d) 210594-U, ¶ 34. In the case at bar, plaintiff's argument for *de novo* review is factually flawed. The trial court relied not only on documentary submissions, but also considered the oral statements by Zelechowski, Equitrade's attorney, who was a participant in the events leading up to the buyout and the primary recipient of the key email in which Angulo declared the loans "completely bogus." Second, as in *Grasso*, under either standard, we would affirm. *Grasso*, 2022 IL App (2d) 210594-U, ¶ 34.

¶ 79                                B. Supreme Court Rule 201 and 219

¶ 80        Supreme Court Rule 201(n) provides, in relevant part:

> "(n) Claims of Privilege. When information or documents are withheld from disclosure or discovery on a claim that they are privileged *** any such claim shall be made expressly and shall be supported by [1] a description of the nature of the documents *** not produced or disclosed and [2] the exact privilege which is being claimed." (Ill. S. Ct. R. 201(n) (May 29, 2014)).

At the hearing before the trial court, Zelechowski admitted that he recalled the September 9, 2017, email in which Angulo called the loans "completely bogus," but he did not think it needed to be produced because he forgot that others were "cc'd" on the email and, thus, he mistakenly thought it was privileged. However, he conceded that no privilege claim was made "expressly" and "supported by [1] a description" with "[2] the exact privilege" being claimed, as the rule requires. Ill. S. Ct. R. 201(n) (May 29, 2014). Zelechowski indicated that no privilege claim was made because neither side had produced a privilege log.

¶ 81        Supreme Court Rul 219(c) provides, in relevant part, "[i]f a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with" any discovery provision or order, the court "may enter, in addition to remedies elsewhere specifically provided, such orders as are just." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). "[T]he court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). "When a sanction is imposed *** the judge shall set forth with specificity the reasons and basis of any sanction so imposed." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Thus, Rule 219 specifically authorizes a court, upon motion or its own initiative, to impose sanctions against both an attorney and his client, for an amount that covers the other side's reasonable attorneys' fees.

¶ 82        In its appellate briefs, Equitrade admitted the following facts: "[Equitrade] did not produce documents 30 days after the Accounting Defendants served their discovery requests." "On April 9, 2021, [Equitrade] responded to the Accounting Defendants' discovery requests. [Record cite.] [Equitrade did not produce the September 9 email" in which Angulo called the loans completely bogus. Equitrade's brief acknowledges that Angulo's email "was produced to the Accounting Defendants by one of the advisors to whom the email had been sent," but not by Equitrade.

¶ 83        Equitrade's brief alleges that it "later investigated and concluded that its failure to locate the September 9 Email resulted from data loss when its electronic files were moved to a new computer." Zelechowski also argues about his client's data loss. However, this explanation is diametrically opposed to the explanation stated by Zelechowski, then

23

Equitrade's counsel, at the hearing on this issue. We cannot find an abuse of discretion by the trial judge for accepting the explanation offered by a party's then-counsel, at the hearing on the issue.

¶ 84    Equitrade did make the data-loss argument in its motion to reconsider, supported with a sworn declaration from Angulo. Angulo declared that "some" data and "some" emails were lost, when he obtained a new computer. "The decision to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion." *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). The limited purpose of a reconsideration motion is to bring to the court's attention:  (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's prior application of existing law. *General Motors*, 374 Ill. App. 3d at 1078. Since the newly alleged data loss was a factual issue, the second and third prongs do not apply. As for the first prong, " '[n]ewly discovered' evidence is evidence that was not available prior to the hearing and trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." *General Motors*, 374 Ill. App. 3d at 1078. Equitrade makes no argument that evidence of the alleged data loss was not available prior to the hearing. Thus, none of the prongs for a proper reconsideration motion apply.

¶ 85    We cannot find the sanction disproportionate, when the concealed document was like the proverbial "smoking gun" and led to summary judgment for the winning party. Further, any objection to the reasonableness of the fee petition was waived by the parties' failure to object within the time specified by the trial court.

24

¶ 86 Equitrade argues that the trial court abused its discretion in awarding Rule 219(c) sanctions, on the ground that the sanction is disproportionate to the harm. However, the rule expressly authorizes the payment of attorney's fees; the parties waived any objection to the reasonableness of the fee petition by their failure to timely object; and the trial court's order considered and explained the reasonableness aspect. In its September 22, 2022, order, the trial court found that, even without waiver, the fees were reasonable. The court explained, first, that although defendants could have sought an award for all "the fees expended in defending this meritless lawsuit" against the accountants, they had not done so, and had sought instead only the fees incurred in connection with their dispositive motions and their motion for sanctions. Second, the court found the billing rates charged and the amount of time expended were "reasonable for defense of an accountant malpractice claim in the Chicago, Illinois legal market over the years 2019-2022." We cannot find an abuse of discretion on these facts.

¶ 87 Zelechowski's first point heading in his appellate brief is that "the trial court's order imposing sanctions was not supported by the record and constituted an abuse of discretion." However, this section omits his decision that the September 9 email did not need to be disclosed in a privilege log--although he independently recalled it--since the other side had not produced such a log. Second, he argues that "[t]he trial court's order imposing sanctions failed to follow the procedural requirements prescribed under Illinois law." In particular, he asserts that the trial court "should have held an evidentiary hearing and allowed Zelechowski to present evidence and testimony before imposing monetary sanctions." However, at the sanctions hearing, the trial court *accepted* as true Zelechowski's oral statement of why the email was not disclosed. Third, both Zelechowski and Equitrade argue in their appellate briefs that Zelechowski was not "under any obligation to search his own documents for materials that

would be responsive to party discovery." This is a non-issue. Without any searching at all, Zelechowski admitted that he recalled the email, but he thought (mistakenly) that it did not need to be disclosed because it was privileged. When asked why the document was then not disclosed in a privilege log as required by the rules, he responded that the other side had not produced a privilege log. Neither Zelechowski nor Equitrade offers any support for this novel exception that, if the other side has not yet produced a privilege log, you do not have to produce one either. In sum, we do not find these arguments persuasive, and we cannot find an abuse of discretion in the trial court's award of Rule 219 sanctions against both client and attorney.

¶ 88                                    C. Rule 137

¶ 89        Supreme Court Rule 137(a) provides, in relevant part, that "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading *** that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." Rule 137(a) further provides that, "[i]f a pleading, motion, or other document is signed in violation of this rule, the court *** may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party *** the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). In the case at bar, the sanctions were entered against the represented party, as well as against the attorney.

¶ 90        When a party seeks Rule 137 sanctions, its petition must identify the offending pleading or motion, the allegedly false statements, and the fees and costs directly resulting from those false allegations. *Appel*, 2021 IL App (1st) 192523, ¶ 63. When evaluating the offending party's allegations under this rule, courts consider what was reasonable under the

circumstances that existed at the time the pleading was filed. *Appel*, 2021 IL App (1st) 192523, ¶ 63.

¶ 91 Equitrade argues under Rule 137 that "[t]he circuit court's award of sanctions was in error for the same reasons that its summary judgment ruling was in error." However, for the same reasons that summary judgment was not in error, we cannot find that sanctions were in error either. With respect to Rule 137, Equitrade argues for *de novo* review, but makes no argument that Rule 137 sanctions were an abuse of discretion. Similarly, under the discretion standard, we also can find no abuse. Under *de novo* review, we would make the same finding. Zelechowski also re-argues the summary judgment motion. However, we cannot find that the trial court erred in awarding sanctions against Zelechowski, the recipient of the "completely bogus" email. In any event, Rule 137 and Rule 219 are independent grounds for sanctions, and we already found no abuse of discretion in ordering them pursuant to Rule 219.

¶ 92 CONCLUSION

¶ 93 For the foregoing reasons, we affirm the trial court's grant of summary judgment and sanctions.

¶ 94 Affirmed.